# CASES

ADJUDGED IN

## THE COURT OF CHANCERY.

*OF THE STATE OF NEW-JERSEY.*

OCTOBER TERM, 1838.

---

## JOHN GEST v. SAMUEL FLOCK et al.

Where a testator by his will devises his land to the use of his wife for life, and directs that it shall be sold upon the marriage or death of the wife, and the youngest child coming of age—upon the death of the testator the feo vests in the heirs,

Whether under the will the executors have the power of making sale or not, unless the lands are devised to them, they must before the sale descend to the heirs; and having so descended, the heirs have the power to transfer their interest in the lands, so far, at least, as to entitle the alienee to all their rights, whatever disposition may afterwards be made of them.

Where a party has obtained a decree of foreclosure, under which the mortgaged premises have been sold, it is too late to question the validity of the mortgage.

It is not a substantial objection to a deed, that the acknowledgment bears date before the deed itself. The true date may always be shown.

Where a sale is directed to be made of lands, and the same person is entitled to the lands that would take the money in case of a sale, and the person entitled elects to take land, a court of equity will not disturb that election or compel a sale.

The giving of a mortgage by the person entitled, is a clear election on his part to take land.

The assignee of an heir, or person claiming an interest under a will, having an opportunity of acquiring a full knowledge of the condition of the estate,

[Gost v. Flock et al.]

will stand in no better situation in asking the interposition of this court, than the heir or legatee himself.

BILL filed January 15th, 1835. It states, that Hendrick Schenck, being seized in fee simple and possessed of certain real and personal estate, situate in the township of Lawrence, in the county of Hunterdon, by his will, bearing date on the 13th of June, 1810, among other things, gave, devised and bequeathed as follows:—" Item—I give and bequeath to my wife the use of all my lands and tenements, during her natural life, she making no waste or destruction thereon; but if she should marry after my decease, my will is that she receive from my estate the legacy which she brought, which was three hundred and fifty pounds; and then my will is that my wife move off the premises, and the farm then to be rented out until the youngest child comes to the age of twenty-one years. Item—In case my wife accepts the said bequest in lieu of her dower, my will is, that after marriage, if it should so happen, the land still not to be sold until the youngest child comes of age, and then as soon as may be convenient. And also my will is, that immediately after my wife's decease, or as soon as may be, all my estate, of every description, be sold, and the money arising therefrom to be equally divided amongst my children, except as will hereafter appear; to Robert D. Schenck, Susan Schenck, Catharine Schenck, Eliza Ann Schenck, share and share alike; and to my son Albert Schenck, one hundred dollars more than any one of my other children." That on the 28th of July, 1810, the testator died, seized and possessed of the said real and personal estate, and leaving his said will unrevoked and in full force. That James Hughes and Henry Dye, the executors therein named, proved the will, and exhibited an inventory and appraisement of the personal estate, amounting to five hundred and twelve dollars and ninety-six cents. That the testator left surviving him, the five children named in his will, to wit, Robert D., Susan, Catharine, Eliza Ann and Albert, and his widow, Margaret Schenck. That the widow accepted, in lieu of her dower, the devises and bequests made to her in the will; receiving the per-

sonal property, and entering into possession of the lands devised to her. That she never married after the death of the testator. That she died about the first of April, 1831 ; and that Albert, the youngest child, attained the age of twenty-one during the life-time of his mother.

The bill further states, that the said Albert Schenck, on the 12th of March, 1831, in consideration, among other things, of six hundred and forty-one dollars, to him in hand paid by the complainant, executed to the complainant a deed of assignment of all that part, share, proportion and dividend of the personal and real estate of the said Hendrick Schenck, which theretofore became due, or which might thereafter descend or become due and payable to the said Albert; which said deed was afterwards duly acknowledged and recorded in the clerk's office of the county of Hunterdon. It insists that the executors, after the death of the widow, and the youngest child's attaining the age of twenty-one years, were bound by the will to sell the lands as soon as it could conveniently be done, and to dispose of the proceeds according to the direction of the will, and also to account to the legatees or their lawful assigns, for the rents and profits accruing after the death of the widow. That the lands of which the testaror died seized were valuable : that the executors might at various times have disposed of them advantageously ; and that they ought so to have done, and have paid Albert's share to the complainant.

The bill further charges, that Samuel Flock, one of the defendants, is in possession of the lands of which the testator died seized, under pretence of title thereto, and that he refuses to account to the complainant.

The bill prays, that the executors may be compelled to execute the trust reposed in them by said will, and in particular, to sell all the testator's real estate, and to pay Albert's share to the complainant ; also to account for all the rents and profits received, or which might and ought to have been received therefrom, since the death of Margaret, the widow of the testator, and to pay Albert's share thereof to the complainant. That Flock, the oth-

[Gest v. Flock et al.]

er defendant, may be compelled to discover by what title he claims the premises, and to account for the rents and profits while in his possession, since the death of the said widow.

The executors neglected to appear or answer, and a decree, *pro confesso,* was taken against them. Samuel Flock, alone, answered the bill.

The answer admits, with few exceptions, the material facts charged in the bill; but states, that the personal estate of the testator proving insufficient to pay his debts, a part of his real estate was sold for that purpose by his executors, under an order of the orphan's court of the county of Hunterdon, and that the said defendant became the purchaser thereof. That Margaret Schenck, the widow of the testator, under the devise to her in the will of Hendrick Schenck, remained in possession of the residue of his real estate, consisting of a farm of about ninety-six acres. That being so in possession of said real estate, and the said Albert Schenck having attained the age of twenty-one years, the said Margaret and Albert, on the 14th of October, 1814, by deed of mortgage, conveyed all their right, title and interest in the premises to the said Samuel Flock, to secure to him the payment of a bond of four hundred dollars, with interest, bearing even date, given by the said Margaret and Albert to the said Samuel Flock. That the said mortgage having been acknowledged, was duly recorded in the clerk's office of the county of Hunterdon.

The answer further states, that the principal and interest of the said mortgage remaining unsatisfied, the said Samuel Flock obtained a decree of this court, bearing date on the 2d of January, 1821, for foreclosure and sale of the said mortgaged premises, by virtue of which decree the premises were afterwards sold by the sheriff of Hunterdon, struck off to said Samuel Flock for a sum less than the amount due upon the mortgage, and conveyed to him from the sheriff, by deed dated the 10th of May, 1821. · That the said Samuel Flock had subsequently procured, for valuable considerations, from all the other children and heirs of Hendrick Schenck, releases of all their interest in the said

[Gest v. Flock et al.]

real estate, by virtue whereof he became seized in fee of the whole of the said real estate, and remained in the peaceable possession thereof, from the date of the sheriff's deed so as aforesaid made to him. The answer insists that the lands, upon the death of the testator, descended to his children and heirs at law; that they had full power to mortgage, release or convey the same; that a complete title at law and in equity had become vested in the defendant; and that the executors were not bound, nor had they any power to proceed to a sale of the said real estate. It denies all combination and confederacy.

Depositions having been taken by both parties, the cause came on for hearing at July term, 1838, upon bill, answer, replication and proofs.

*Wilson* and *Southard*, for complainant.

*H. W. Green* and *I. H. Williamson*, for defendant.

THE CHANCELLOR. The complainant claims to be the owner, and entitled, under an assignment and transfer, of whatever interest Albert Schenck took under the will of his father, Hendrick Schenck, deceased. Samuel Flock, the defendant, also claims to be the owner, and entitled to the same interest, under a mortgage made to him many years before by Albert Schenck, which mortgage he foreclosed, and under a sale became the purchaser of the premises. Whether this interest of Albert Schenck in his father's will, was of such a character or not, as to pass by this mortgage, is really the turning question in the cause. It involves the true construction of the will of Hendrick Schenck.

The testator, Hendrick Schenck, died in the year 1810, leaving real and personal estate. The real estate consisted of a farm situated in the township of Lawrence, in the county of Hunterdon, (now Mercer,) in this state. The will, after making certain bequests which are immaterial for our present purpose, gives the use of all the testator's lands to his wife during her natural life unless she marry again, when she is to leave the farm, and it

[Gest v. Flock et al.]

is to be rented until the youngest child comes of age. The widow never married, and died in the year 1832. The important clause in the will is the sixth, and is in the following words: "In case my wife accepts the said bequest in lieu of her dower, my will is that after marriage, if it should so happen, the land still not to be sold until the youngest child comes of age, and then as soon as may be convenient; and also my will is, that immediately after my wife's decease, or as soon as may be, that all my estate, of every description, be sold, and the money arising therefrom to be equally divided amongst my children, except as will hereafter appear: to Robert D. Schenck, Susan Schenck, Catharine Schenck, Eliza Ann Schenck, share and share alike; and to my son, Albert Schenck, one hundred dollars more than any one of my other children."

It will be remarked in this clause, that the testator does not devise his estate to his executors, nor does he say by whom it shall be sold. It is a general direction to sell it, upon the marriage or death of his wife, and the youngest child coming of age. The object in selling, is plainly nothing more than to distribute the proceeds among the testator's children. What became of the testator's estate at his death? His widow had the life estate, but in whom did the remainder vest until the sale, in the executors or heirs? It clearly vested in the heirs. Where there is no devise of the lands to the executors, but a naked power is conferred upon them to sell, until such sale takes place the right vests in the heirs. The question, whether the executors were the persons intended by the testator to make the sale, or whether that power belonged to the heirs, as would be the case in the absence of any express or implied appointment of the executors for that purpose, does not appear to me material, in the present case, to be settled. Whether the executors had this power or not, unless the lands are devised to them, they must in the mean time descend to the heirs, and having so descended, they have the power to transfer their interest in them, at all events, so far as to entitle the alienee to all their rights, whatever disposition should afterwards be made of them. *Herbert* v. *Ex'r of Tut-*

*hill*, 1 *Saxton*, 141 ; 11 *Vesey, jun.* 496 ; 1 *Caine's Cases in Error*, 16.

Had the complainant, under his assignment, been clearly entitled to Albert's interest in his father's estate, and the executors denied their power to sell, in that event the settlement of the question, whether they had power or not, must have been important; and my decided impressions are, that upon a fair construction of the will, the power to sell is conferred on the executors, but coupled with no interest which can prevent the legal title from vesting in the heirs at law. But the executors have not appeared or answered, and the bill, as to them, has been taken, *pro confesso*. The only controversy now is with the defendant, Flock, upon the validity of his mortgage.

The disputes which have arisen upon the question, whether executors have a mere naked power to sell, or a power coupled with an interest, have been to decide whether if one of the executors die, the survivor could sell. At common law it is well settled, that a surviving executor may sell on a power coupled with an interest, but not on a mere naked power. The statutes of this state, in *Rev. Laws*, 226 and 605, have settled with us that question, by giving the surviving executor in all cases power to sell, where the will directs a sale of lands by executors.

But the complainant's counsel object to the validity of Flock's mortgage, from matters appearing on its face. 1. Because it bears date the 14th of October, 1816, and yet the acknowledgment purports to have been made prior to that time, and on the 14th of June, in the same year. 2. Because of certain erasures and obliterations. It is a sufficient answer to these objections to say, it is now too late to take them, since the defendant has established the validity of this mortgage by a decree of this court, under which he became a purchaser at the sheriff's sale. This decree was obtained against Albert Schenck himself, and that ten years before the complainant pretends to have had any interest in the question. There is, however, nothing substantial in the objections themselves. A mistake in the date of a deed will not destroy it; the true date, the time of its actual execu-

[Gest v. Flock et al.]

tion, may always be proved. It is manifest no fraud was intended, as the paper could never have been examined without being detected. The erasures are made so as to leave the parts erased plainly to be read. The erasures were of words of surplusage. It would seem, also, from the bill, that the complainant believed Albert to be under twenty-one years of age at the time of executing the mortgage; but the answer and proof in the cause establish, beyond a doubt, that he was of full age.

I consider the mortgage, therefore, good, and that Albert had such a vested interest at the time as might be passed by it, in the lands of his father.

There is another view of this case equally fatal to the complainant's pretensions. Where a sale is directed to be made of lands, and the same person is entitled to take the lands that would take the money in case of a sale, and the party elects to take lands, a court of equity will not disturb that election, or compel a sale. *Osgood* v. *Franklin*, 2 *John. Ch. Rep.* 21 ; *Amler* v. *Amler*, 3 *Vesey*, 583. The giving of the mortgage by Albert, was a clear election on his part to take land, and upon no principle can that election be now disturbed. This election, it appears, was not only made by Albert, but by the whole of the testator's family ; for they all conveyed their shares to the defendant, Flock, about the same time he purchased Albert's share at sheriff's sale. If the complainant can defeat the sale of Albert's share, I see nothing to prevent any other member of the family now from making a similar transfer, and thus deprive the defendant of his entire interest in the lands.

The complainant's assignment bears date in 1831, fifteen years after the date of the mortgage ; and whether it was a cash purchase, or taken as security for an antecedent debt, can make no difference. From the evidence, it would seem, the complainant was desirous to make it appear as a cash purchase ; for the witnesses to the assignment say they saw the money handed over. This was, no doubt, mere form ; for in the body of the assignment itself, it purports to be taken " in payment and satisfaction of certain debts and demands which he holds against the

[Gest v. Flock et al.]

said Albert Schenck." In either case, the transaction was fair and just on the part of the complainant. With this assignment, standing in the place of Albert, the complainant calls upon the executors, in this suit, to account to him for the testator's estate, and asks a decree compelling them to sell the lands embraced in the mortgage of Flock. Flock purchased and went into possession, under the sheriff's sale, in 1821. Under these circumstances, is there any equity in the prayer of the complainant? Why should this court interpose its power to compel a sale of these lands by the executors? And for what purpose? To deprive the defendant of land which he purchased in good faith, and for valuable consideration, and give the proceeds to the complainant, who can upon no principle be placed on better ground than the defendant. The fact that Flock had recorded in the office of the clerk of the county, all his conveyances for the property, and had been for so many years in the peaceable possession, was enough to put the complainant on inquiry, and afforded him a fair opportunity, before taking the assignment, to investigate the whole situation of the estate. It must be borne in mind, that this application does not come from a creditor of the testator, seeking a just demand against that estate, but is an effort by an assignee of one of the heirs, under an assignment made in 1831, by the aid of this court, to compel a sale of the testator's lands, for the purpose of giving such assignee the proceeds of such sale, and to defeat a bona fide purchaser of those lands under a mortgage made by this same heir, as far back as the year 1816. Such an exercise of the power of this court would work manifest injustice and wrong. With the opportunity afforded the complainant to acquire a full knowledge of the condition of this estate, I can place him in no better situation than Albert himself would stand in if he was asking the interposition of the court. He knew he had long since conveyed to the defendant, Flock, and received his money for the land. After that, it must indeed be a stern necessity that would induce any court to aid him in defeating the title of one purchaser of his property,

[Gest v. Flock et al.]

and that, too, for the purpose of getting twice paid for the same lands.

In every view which I have been able to take of this case, whether upon the dry question of the right of Albert to mortgage the remainder vested in him under the will of his father, or upon the right of the heir to elect to take land instead of money, or upon the general principles of equity and common justice, I can see no ground for disturbing the defendant, Flock, in the enjoyment of his estate in the lands in question.

As to him, therefore, the bill must be dismissed, with costs.