ALEXANDER BONNELL'S EXECUTORS

*v.*

ALICE R. BONNELL et al.

1. Executors are entitled to ask the direction of the court when the present condition of their estate requires them to act in discharge of their duty, and such duty, or their course of action therein, is involved in doubt; but such inquiries should be limited to interests which are necessarily involved in the emergency, and which can be properly and fully represented before the court.

2. Trustees appointed "during the infancy" of a minor are entitled to the custody of bequests given generally to such minor.

3. A testator directed his executors to sell all his real estate as soon as could be advantageously done, and the proceeds thereof he gave in equal parts to his six children and his wife, the six-sevenths to his children, to them, their heirs and assigns forever, and the one-seventh to his wife during her natural life, with remainder over to his heirs at law, and provided, in case of the death of either one of his said children before receiving his or her portion of his estate, that the issue of such child, if any, should receive in equal parts the portion such child of his would have received if living.—*Held*, that a son who died after the testator, without issue, took a vested interest in one-seventh of said estate, subject to the power of sale, which interest he was entitled to dispose of by will, and that his widow, as his sole devisee and legatee, was entitled to one-seventh of the undistributed proceeds of real estate sold, and vested, in interest, of one-seventh of the real estate unsold, subject to the power of sale.

4. While the intention of the testator is to govern the construction of his will, he is presumed to have framed his bequests in view of the general rules of construction established by the courts, and any intention at variance therewith, to be recognized, must be clearly indicated, and is not to be imputed from assumed purposes, or a fancy as to what the testator really meant, formed from other provisions. While a will is to be construed as an entirety, the legal construction of one section is not to be controlled by guesses as to the intent of the testator arising from the disposition of his property in the remaining sections, and particularly is this so if such construction results in anomalous and uncertain conditions.

On bill and answer.

*Mr. William Brinkerhoff,* for the complainants. ·

*Mr. William P. Douglass,* for the defendant Alice R. Bonnell.

GREEN, V. C.

This bill is filed by the surviving executors for a construction of the will of Alexander Bonnell, late of Jersey City, in this state.

The testator died September 30th, 1886, leaving him surviving his widow, Sarah J. Bonnell, and his children and only heirs at law, Sarah B. Gifford, wife of George Gifford; Catharine D. Tappan, wife of James M. Tappan; Alexander Bonnell, Jr., Frank Roe Bonnell, Mary A. Holton, wife of John H. Holton, and Edith Bonnell, the last named being an infant.

Alexander Bonnell, Jr., died without issue December 21st, 1888, leaving a last will and testament, whereby he appointed his widow, Alice R. Bonnell, sole executrix, and gave, devised and bequeathed to her, after the payment of all his just debts and funeral and testamentary charges, the rest and residue of his estate, whether real, personal or mixed, whatsoever and wheresoever situate and being, to have and to hold to her, her heirs and assigns forever.

Alexander Bonnell, the father, died seized and possessed of considerable real and personal estate. By the will, of which a construction is sought, after directing the payment of the debts of his estate and a bequest of personal property to his·wife, he

gave to his daughter Edith a special legacy of $10,000, directing it to be safely invested for her by trustees named, and one-half thereof, with accumulations of interest, he directed the said trustees to pay to his said daughter when she attained the age of twenty-five years, and the remaining half, with all accumulations, when she was thirty years of age, and provided, in case of the death of Edith before receiving said legacy, that the same go to his heirs at law in equal parts.

All the rest and residue of his personal estate he directed his executors to divide into seven equal parts, six of which he gave and bequeathed to his said six children by name, to be equally divided among them share and share alike, and the other seventh to his wife, Sarah J. Bonnell, for and during her natural life, with remainder over to his heirs at law.

He then directed his executors to sell all his real estate as soon as could be advantageously done, giving them full power to make such sale and convey the same.

He then makes these provisions:

"And the proceeds of said real estate, I give, devise and bequeath in equal parts to my said six children and my said wife, the six-sevenths thereof to my six children I give and devise to them, their heirs and assigns forever, and the one-seventh thereof to my said wife I give and devise to her, my said wife, for and during her natural life, with remainder over to my heirs at law.

"I direct, whenever a sale is made of any part of said real estate, that the proceeds of such sale shall be at once divided and distributed as herein provided. And I provide that in case of the death of either one of my said children before receiving his or her portion of my estate, the issue of such child, if any, shall receive in equal parts the portion such child of mine would have received if living.

"And provided further, that in case my daughter Edith dies without issue and without disposing of her estate by will, so much of her estate then remaining, which was derived from my estate under the provisions of this will, shall go to my heirs at law in equal parts.

"Lastly, I nominate, constitute and appoint my said wife, Sarah J. Bonnell, and my son-in-law, George Gifford, trustees for my daughter Edith during infancy, and trustees under the provisions of this will to perform and execute the trusts herein created—that is to say, to take charge of and invest for the benefit of my said daughter Edith the said special legacy of ten thousand dollars, and also to take charge of and invest and manage the said life estate of my said wife to the best interests of the *cestui que trust* and the estate in remainder; the whole income of said estate to be paid to and enjoyed by my

said wife, and the estate in remainder at her death to be equally divided between all my children. The children of any deceased child to receive in equal parts its parent's portion."

Considerable real estate of which Alexander Bonnell the father died seized remains unsold, or the proceeds thereof are undistributed. Mrs. Alice R. Bonnell, widow and sole legatee and devisee of Alexander Bonnell the son, claims to be seized of the one undivided seventh part of the unsold real estate, and entitled to the one-seventh part of the proceeds of real estate not distributed.

Executors are entitled to ask the direction of the court when the present condition of the estate requires them, to act in discharge of their duty, and such duty, or their course of action therein, is involved in doubt; but such inquiries should be limited to interests which are necessarily involved in the emergency, and which can be properly and fully represented before the court. *Traphagen* v. *Levy, 18 Stew. Eq. 448; Griggs* v. *Veghte, 2 Dick. Ch. Rep. 179.*

There are two lines of inquiry presented which the present exigencies of the estate require to be settled, and which so far fall within the rule, viz., as to whom the two-sevenths given to Edith should be intrusted during her minority, and what interest Alexander the son took in the real estate.

First, as to the interest of Edith in the two-sevenths of the estate. There can be little, if any, doubt upon this question.

The will provides, in the clause appointing trustees, that the widow, Sarah J. Bonnell, and the testator's son-in-law, George Gifford, shall be trustees for his daughter Edith during infancy *and* trustees under the provisions of his will to perform and execute the trusts therein created, which he declares to be, to take charge of and invest, for the benefit of his daughter Edith, the special legacy of $10,000; and also to take charge of and invest and manage the life estate of his wife. The $10,000 for Edith was to be paid to her, one-half when she attained the age of twenty-five years, and the other half when she was thirty years of age; but she is also given two-sevenths of his estate, which she will be entitled to receive personally when she is of age, and

in appointing trustees for her during infancy he was certainly making provision for the care of this fund until she is twenty-one years of age.

The two-sevenths given to Edith should be paid to the widow, Sarah J. Bonnell, and to George Gifford, as trustees for her during her infancy.

Next, as to the interest which Alexander Bonnell, Jr., took in the real estate of which the testator died seized.

No actual disposition of the real estate as such is made in the will; it confers on the executors a power of sale, with an absolute and positive direction to sell as soon as it can be advantageously done. The postponement is for the benefit of the estate. The proceeds of such real estate he gives in equal parts to his six children and his wife; to his children their shares to them, their heirs and assigns forever; to his wife one-seventh for life, with remainder to his heirs at law; and he directs distribution to be made at once on the sale and receipt of proceeds. There is no gift over in the event of any of the children dying without issue, nor any residuary clause as to this part of his estate.

These provisions, standing alone, under the authorities, would vest in the son Alexander an undivided one-seventh of the proceeds of real estate sold; and vest in him, in interest, an undivided one-seventh of the real estate unsold, subject to the power of sale, and entitle him in the meanwhile to the rents and profits, with a right to make disposition of such interest if he saw fit. *Herbert* v. *Tuttle's Exrs., Sax. 141 ; Gest* v. *Flock, 1 Gr. Ch. 108 ; Fluke* v. *Fluke's Exrs., 1 C. E. Gr. 478 ; Gulick* v. *Gulick's Exrs., 10 C. E. Gr. 324; Den.* v. *Snowhill, 3 Zab. 447, 455 ; Romaine* v. *Hendrickson's Exrs., 9 C. E. Gr. 231, 237; Moores* v. *Moores, 12 Vr. 440, 444; Todd* v. *Wortman, 18 Stew. Eq. 725.*

But it is claimed that other provisions of the will show a contrary intention on the part of the testator so clearly that the case is taken out of the rule above stated ; that the intention of the testator, thus clearly indicated, was, that in no event was any part of his estate to go, in the first instance, to any one (except his wife) not of his own blood, and that, consequently, Alexander the

son had no vested interest in the undistributed estate which he could devise or bequeath to his wife.

It is insisted that such intention is indicated by the fact that in the case of every gift over, save one, the testator has made it to his heirs at law, and that it was such intention which led him to make the provisions he has for the division of the proceeds of his real estate, and particularly, that in case of the death of either of his children before receiving his or her portion of the estate, the issue of such child, if any, should receive in equal parts the portion such child of his would have received if living.

It is argued, from the clause as to the proceeds of the real estate, that it is only when a sale is effected of any portion of the real estate, and the proceeds are in a distributable form, that he gives, devises and bequeaths to his six children, in equal parts, six-sevenths of such proceeds to them, their heirs and assigns forever ; that the devise is to take effect at the specified time expressed in the will, viz., whenever a sale is made of any part of the real estate, thus keeping, it is argued, the unsold real estate as part of his estate for the benefit of his heirs at law ; that as he had thus provided that the unsold portions of his real estate did not vest until a sale, on the death of either of them without issue, the portion of the proceeds when sold which would have gone to such child if living, would go, under the statute, to his heirs at law, but as he desired if any child died leaving issue, that such issue should take the parent's share, he provided, by the second clause, against a lapse in that case.

It must be conceded that this argument derives any force it may have, from the fact that the testator has provided that the undistributed portion intended for any child dying leaving issue, should go to such issue. The other clauses invoked are limitations over after the expiration of the wife's life estate, and provision in case Edith should die intestate and without issue. These provisions show how careful the testator was to guard against every conceivable contingency.

He intended that his wife should take only a life estate, and therefore made provision for the estate after its termination.

35

Edith was a mere child when the will was made. By it he gave her $10,000 more than he gave to either of his other children, but this legacy was to be paid to her only in the event of her living to the ages he fixed therefor, and he provides against a lapse of such legacy in the event of her death before such time of payment. When, however, he comes to deal with the interest which Edith is given in the estate, in common with her brothers and sisters, there is a gift over of her interest only in the event of her dying before she was of a sufficiently mature age to make a will or have children.

The very care thus displayed is the ground for the argument that the testator provided only for the gift over of the share in the undistributed proceeds of a child dying with issue, because he supposed no interest vested in any child before sale, it being contended that otherwise he would have made a gift over of the unsold real estate and undistributed proceeds which would have fallen to a child who died without issue.

While it is true that the intention of the testator is to be carried into effect, if possible, it is presumed, in ascertaining such intention, that the testator framed his will in view of those general rules of construction which have been established by the courts (*Davison* v. *Rake, 18 Stew. Eq. 767, 771*), and any intention to vary therefrom, to be recognized, must be clearly indicated, and is not to be imputed from assumed purposes, or our own fancies as to what the testator may have meant, formed from other provisions. " While we must construe the will as an entirety, yet we cannot control the legal construction of one section by guesses as to the intent of the testator arising from the disposition of his property in the remaining sections." *Gulick* v. *Gulick's Exrs., 12 C. E. Gr. 498.* And particularly is this so if such construction results in anomalous and uncertain conditions.

The argument advanced rests on the assumption that it was the intention of the testator that no interest in his real estate should be vested in the beneficiaries until a sale by the executors, and that until such time it was to remain "a part of his estate." But in whom, under this construction, is the freehold vested in the meanwhile ? Not in the heirs, by the contention itself; not

in the executors, for there is no devise to them; they have simply a naked power of sale; and we are therefore called on to assume that the testator intended that the freehold was to be in abeyance between his death and the sale by the executors—a condition which violates fundamental principles of law. *Chal. Real Prop. 78.*

The suggestion that, in the interim, it vests in the children by operation of the statute, assumes, in an effort to ascertain the intention of the testator, that he intended to die temporarily intestate as to his real estate, presenting the anomaly of an intestacy to be terminated by the execution of a power of sale under the will.

Again, who, if the construction contended for prevails, is entitled to the rents before sale? Under the legal construction of the bequest the beneficiaries would take such rents, because their rights vest, in interest, from the death of the testator, but, under the one suggested, the rents are undisposed of.

Further, the construction contended for results also in an intestacy in the unsold portions of the real estate as to the share of any child dying without issue. It cannot be assumed that the testator had any such intention; the whole will shows this was farthest from his thoughts. *Leigh* v. *Savidge, 1 McCart. 124; Yawger* v. *Yawger, 10 Stew. Eq. 216.*

These considerations would be sufficient to forbid the adoption of the construction sought to be placed upon these provisions, if it was even probable the intention of the testator was as contended. But I fail to detect any clear indication of such intention. This will is symmetrical and complete; it has not been carelessly drawn; it has intrinsic evidence of design and comprehension, not only of the character and extent of the testator's estate, but of the claims and wants of those who were the objects of his bounty.

His personal estate was in condition to be immediately disposed of, and he provided therefor. His real estate he directed his executors to sell as soon as it could be advantageously done, and provided for the immediate distribution of the proceeds.

The governing idea, throughout, is to divide his estate equally among his six children. He provided for his wife by giving

her a share equal to each child for life, and after the termination of such estate, giving it over to his heirs at law.  Edith was the only one of tender years; the other children, it is evident, were grown up, and had been settled in life.  He gave her, therefore, a greater share, but provided, if she does not live to receive it, the fund shall go to his heirs at law.  Being so young, she may die before she is capable of making a will, or intestate if capable, and without having children, and he made provision in the event of her death under those contingencies.  If any child dies with issue before having received any portion of the proceeds of the real estate, the grandchildren are not to be disinherited as to such property, but are to take the parent's share.  In all other cases the gifts are absolute, unconditional and unlimited.  The provisions are clear and unequivocal.  By their legal construction the estate is effectively and entirely disposed of.  On his death it is vested in interest in his six children, subject, as to one-seventh, to the widow's estate for life, and all, so far as the real estate is involved, subject to the power of sale, and each share subject further to be divested, as to unsold real estate or undistributed proceeds of real estate, in favor of the issue of a child dying leaving issue.  It was as to only such portion of his estate, and only on such condition, that he placed any limitation on the gift to the children, other than Edith, and those conditions not existing in the case of Alexander, the gift was to him absolute and without limitation.

I am therefore of opinion, that Alexander Bonnell, Jr., took a vested interest in one-sixth of the real estate from the time of the testator's death, subject to the power of sale in the executors, and had the power to dispose thereof by will, and that his widow, Alice R. Bonnell, is, under his will, entitled to such interest in the estate, and is entitled to receive the portion of the proceeds of the real estate which would have been paid to her husband, Alexander, had he lived.

The other questions are not such as come within the rule indicated, as being presented by the present condition of the estate, and involve possible rights of parties not before the court, and contingencies which may never happen.