ALVIN MERCER PARKER AND JOSEPH BROOKS BLOODGOOD PARKER, EXECUTORS OF THE ESTATE OF ANNIE C. B. PARKER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 80651.   Promulgated March 10, 1937.

*Alfred S. Weill, Esq., Hugh Satterlee, Esq., Walter C. Blakely, Esq., William R. Green, Jr., Esq.,* and *Albert S. Lisenby, Esq.,* for the petitioners.

*Lewis Pendleton, Esq.,* for the respondent.

### OPINION.

BLACK: This proceeding involves respondent's determination of a gift tax deficiency of $898.46 against the estate of Annie C. B. Parker, deceased, for the calendar year 1924. The entire deficiency is in controversy.

The issue is whether, upon the facts, certain personal property, of the value of $120,535.75, given by Annie C. B. Parker on September 23, 1924, was "received" by her from prior decedents within

five years prior thereto within the meaning of the words "received by the donor * * * from a decedent by gift, bequest, devise, or inheritance" as used in section 321 (a) (4) of the Revenue Act of 1924. Submission was made upon the pleadings.

The facts alleged in the petition are all admitted in the answer and are as follows:

(a) Annie C. B. Parker died testate on August 18, 1931, naming as Executors under her Will Alvin Mercer Parker and Joseph Brooks Bloodgood Parker, the petitioners hereinbefore named, who duly qualified and now are acting as such.

(b) The Will of Annie C. B. Parker's sister, Mary Frances Bloodgood, who died December 19, 1918, was probated in the office of the Register of Wills in Philadelphia, Pa., where the decedent resided. Under the residuary clause of her Will, the residue of her estate was bequeathed in equal portions to Joseph Bloodgood, Jr., and Annie C. B. Parker, the petitioners' donor as follows:

"All the rest, residue and remainder of my estate of whatsoever kind and wheresoever situate I give and devise and bequeath in equal shares to my said brother the said Joseph B. Bloodgood, Jr., and my said sister the said Annie C. B. Parker absolutely and in fee simple and to the survivor should either predecease me."

On October 8, 1919, the account of the Executors of the Estate of Mary Frances Bloodgood was confirmed by the Orphans' Court of Philadelphia County, Pennsylvania, and in accordance with that account there was distributed to Annie C. B. Parker on October 19, 1919, 22 shares of common stock of Lehigh Valley Railroad Company, and, on November 15, 1919, 341 shares of common stock of said company.

(c) The Will of Annie C. B. Parker's brother, Joseph B. Bloodgood, Jr., who died January 22, 1919, was probated in the office of the Register of Wills in Philadelphia, Pa., where the decedent resided. Upon the residuary clause of his Will, the residue of his estate was bequeathed to Annie C. B. Parker, the petitioners' donor, as follows:

"All the rest and residue of my estate I give devise and bequeath to my said sister Annie C. B. Parker absolutely and in fee."

On December 24, 1919, the account of the Executors of the Estate of Joseph B. Bloodgood, Jr. was confirmed by the Orphans' Court of Philadelphia County, Pa., and in accordance with that account, there was distributed to Annie C. B. Parker on June 7, 1920, 400 shares of common stock of United States Steel Corporation, and on October 20, 1920, 717 shares of common stock of Lehigh Valley Railroad Company, which shares were owned by Joseph B. Bloodgood, Jr., at the date of his death, and 459 shares of the stock of that company which had been awarded to the executor of the Estate of Joseph B. Bloodgood, Jr., under the Will of his sister, Mary Frances Bloodgood.

(d) Returns for Federal Estate Tax were filed by the executors of the above referred to decedents' estates and in the case of the Estate of Mary Frances Bloodgood the Lehigh Valley Railroad Company common stock was valued at $57.50 per share and in the case of the Estate of Joseph B. Bloodgood, Jr., the Lehigh Valley Railroad Company common stock was valued at $54.50 per share and the United States Steel Corporation common stock at $90.0625 per share and Federal Estate Tax was determined and paid upon the basis of such valuations.

(e) On September 23, 1924, the petitioners' donor, Annie C. B. Parker, created two deeds of trust and conveyed and delivered to the trustees named in said deeds of trust the above referred to 400 shares of United States Steel

Corporation common stock and 1,539 shares of Lehigh Valley Railroad Company common stock, all of which stock had been acquired by the petitioners' donor in the manner hereinabove set forth.

(f) The trusts, hereinabove referred to in subparagraph (e) hereof, made by the petitioners' donor, Annie C. B. Parker, on September 23, 1924, were created, and the conveyance and delivery of said 400 shares of United States Steel Corporation common stock and 1,539 shares of Lehigh Valley Railroad Company common stock were made less than five years after said stocks were received by her, though more than five years after the death of the decedents from the executors of whose estates said stocks were received by petitioners' donor, Annie C. B. Parker.

(g) A Federal Gift Tax Return in which the value of the above referred to shares of stock at the time of the conveyance and delivery to the trustees was reported, was filed with the Collector of Internal Revenue at Philadelphia, Pa. Under Schedule (d) of said return a deduction was claimed for the $120,535.75, value of the aforesaid 400 shares of United States Steel Corporation common stock and the 1,539 shares of Lehigh Valley Railroad Company common stock as property identified as previously taxed in accordance with the provisions of Section 321 (a) (4) of the Revenue Act of 1924.

(h) In determining the net gifts subject to tax, the respondent allowed no deduction for the $120,535.75 claimed on account of property identified as previously taxed.

The question involved arises under the provisions of section 321 (a) (4) of the Revenue Act of 1924, which provides that, in computing the amount of the gifts subject to the tax imposed by section 319, as amended by section 324 (a) of the Revenue Act of 1926, there shall be allowed as a deduction:

An amount equal to the value of any property transferred by gift within the calendar year, which can be identified (A) as having been received by the donor within five years prior to the time of his making such gift, either from another person by gift or from a decedent by gift, bequest, devise, or inheritance * * *.

There is here no question of identification. The parties agree that the 400 shares of United States Steel Corporation stock and the 1,539 shares of Lehigh Valley Railroad Co. stock were received by Annie C. B. Parker from two decedents (her sister Mary and her brother Joseph) by bequest. They disagree only on whether those shares were so received "within five years" prior to September 23, 1924, the date she gave them away. Petitioners contend that Annie C. B. Parker did not receive the shares until actually distributed to her by the executors of the estates of her brother and sister, respectively. If petitioners are correct in this contention, the shares were received by Annie C. B. Parker within the five-year period, and petitioners would be entitled to the deduction of $120,535.75 claimed under section 321 (a) (4), *supra*. Respondent contends that, within the meaning of the above cited statute, Annie C. B. Parker received said shares at the dates of death of her brother and sister, respectively. If, therefore, respondent's contention is correct, petitioners would not

be entitled to the deduction claimed for the reason that both Mary and Joseph died more than five years prior to September 23, 1924.

The respondent's determination was based upon his ruling in G. C. M. 674 (V-2 C. B. 237). In his statement attached to the deficiency notice he also referred to *Brewster* v. *Gage,* 280 U. S. 327, as . "* * * presenting facts which are in certain important particulars similar to those in the instant case." In his brief counsel for respondent argues that as applied to bequests the word "received" has the same meaning in the gift tax provisions relating to prior taxed property as it has in the estate tax provisions relating to such property (citing section 303 (a) (2) of the Revenue Act of 1924, *Burnet* v. *Guggenheim*, 288 U. S. 280, and *Second National Bank & Trust Co. et al., Executors*, 23 B. T. A. 370; affd., 63 Fed. (2d) 815); and that in both the estate and gift tax statutes, which were enacted as Part I and Part II, respectively, of Title III of the 1924 Act, the word "received" should be construed as meaning the acquisition of the right in property rather than the actual physical possession thereof.

Petitioners' contention, reduced to its simplest form, is that the plain, ordinary, and commonly understood meaning of the word "received" comprehends an actual reduction to physical possession of the property in the hands of the recipient. They rely principally upon the case of *Avery* v. *Commissioner*, 292 U. S. 210.

We do not think it is necessary at this time to decide whether the word "received" has the same meaning in section 321 (a) (4) of the Revenue Act of 1924 as it has in section 303 (a) (2) of that act. As far as we know there is no decision construing this word as used in the estate tax part of the statute. It was not construed in the *Second National Bank & Trust Co. et al., Executors, supra*. We think, therefore, it will suffice if we determine its meaning as used in the gift tax part of the statute.

If we were to construe the word "received" by itself alone without any consideration of the context in which it was used, there would be force in petitioners' argument. We think, however, that the word "received" can not be so construed, but must be interpreted in the light of the context in which it was used, namely, "received by the donor * * * from a decedent by gift, bequest, devise, or inheritance * * *." Cf. *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84.

Annie C. B. Parker was a residuary legatee. She received the property in question from two prior decedents by bequest. Under general rules of law, does a residuary legatee "receive" property from a decedent by bequest at the time the decedent dies, or when the property is distributed to the residuary legatee by the personal representative of the decedent's estate?

In *Brewster* v. *Gage*, *supra*, the petitioner was a residuary legatee under the will of his father, who died on May 20, 1918. On April 19, 1920, the Surrogate's Court at Rochester, New York, entered a final decree pursuant to which certain stocks were distributed to petitioner, who sold some of them in 1921 and 1922. The statutory basis for purposes of determining gain or loss in such a case was the value of the stock "at the time of such acquisition." The Supreme Court held that "the time of such acquisition" was the date of decedent's death and not the date of distribution made pursuant to the court's decree.

*McFeely* v. *Commissioner*, 296 U. S. 102, was also a case where the taxpayers were residuary legatees who had received property from a decedent by bequest. The case turned on whether the legatees had "held" the property for more than two years. In deciding that the legatees commenced to hold the property from the date of decedent's death rather than from the date of distribution, the Supreme Court said:

> In common understanding to hold property is to own it. In order to own or hold one must acquire. The date of acquisition is, then, that from which to compute the duration of ownership or the length of holding. Whether under local law title to personal property passes from a decedent to the legatee or next of kin at death subject to a withholding of possession for purposes of administration, or passes to the personal representative for the purposes of administration,—the title of the beneficiary, though derived through the executor, relating back to the date of death,—is for present purposes immaterial. In either case, the date of acquisition within the intent of the Revenue Act is the date of death.

In *Cook* v. *McDowell*, 52 N. J. E. 351; 30 Atl. 24, three surviving executors of the estate of Lewis D. Cook, who died in 1891, brought a bill for the construction of the latter's will, the sixth paragraph of which was as follows:

> I give, devise, and bequeath all the rest and residue of my property, both real and personal, to my six children [named] to be divided equally among them, share and share alike to them, their heirs and assigns forever. In case any of my said children die *before receiving their share*, leaving issue, then I give, devise, and bequeath to such issue the share the parent would have taken if living. [Italics supplied.]

On May 3, 1893, before there was any distribution of the father's estate, one of the children (Frederick) died testate without issue. In his will, among other things, he gave and devised a certain part of all the residue of his estate to the defendant, McDowell. In instructing the complainants what disposition was to be made of the share apportioned to Frederick in his father's will, the court said:

> The rule in such cases is that the legacy vests at the death of the testator. *Bonnell's Ex'rs.* v. *Bonnell*, 47 N. J. Eq. 540, 20 Atl. 895, where the leading cases of this state supporting this rule are cited. I am of opinion that

Frederick H. Cook took a vested estate in the whole residue at his father's death, which he could lawfully dispose of by his will. The complainants will be instructed accordingly.

In *In re Werner's Estate*, 256 N. Y. S. 372, the decedent's will provided for the division of the residue of his estate among his children after his wife's death, with a further provision that "Should any of my said children die without leaving issue before he or she *receives* his or her full share of my estate, as above provided, I give, devise and bequeath the share of such child to the survivors * * *." (Italics supplied.) One of the children died testate after her mother but before there was any distribution. The court held that the word "received" should be construed as meaning entitled to receive rather than actual physical possession, and that, since the daughter was so entitled, she had a right to dispose of her share by will. The daughter's share was therefore distributed in accordance with the daughter's will rather than to the surviving children under the will of the first decedent.

We believe that when the word "received" is interpreted in the light of the context in which it was used, namely, "received by the donor * * * from a decedent by gift, bequest, devise, or inheritance * * *", it must be construed as meaning the acquisition of the right in property rather than the actual physical possession thereof. *Brewster* v. *Gage*, *McFeely* v. *Commissioner*, *Cook* v. *McDowell*, and *In re Werner's Estate*, all *supra*. Cf. *Whittell* v. *McLaughlin*, 31 Fed. (2d) 30.

We do not think that *Avery* v. *Commissioner*, *supra*, requires the construction contended for by petitioners. The statute involved in the *Avery* case provided that "The amount of all such items [including dividends] shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212 [1924 Act] any such amounts are to be properly accounted for as of a different period." The two methods of accounting generally recognized are the cash receipts and disbursements basis and the accrual basis. Avery kept his accounts under the first method. He was a large stockholder and president of a corporation which during November 1924 declared a dividend payable on or before December 31, 1924. Avery's check was made out during 1924, was dated December 31, 1924, but was held in the treasurer's office until January 2, 1925, when it was distributed to Avery through the office mail. The question before the Supreme Court was when, within the intendment of the statute, the dividend was "received" by Avery. It held that the time of receipt was not until January 2, 1925. If Avery had kept his accounts under the accrual method, a different result would have obtained. This indicates to us that Congress intended that the word

"received", as used in section 213 (a) of the Revenue Act of 1924, meant something more tangible than the mere acquisition of a right in property. As soon as the dividend was declared Avery had a right thereto, which, under the accrual method, would have been income to him in 1924; but, being on the cash receipts and disbursements basis, this mere right to the dividend was not enough to make it income to him in 1924. The context of section 213 (a), wherein the word "received" is but a part, is quite different from the context of section 321 (a) (4), and it is our opinion that the word "received" should be construed according to the context in which it is used. Cf. *Helvering* v. *Stockholms Enskilda Bank*, *supra*, wherein the Supreme Court held that the word "obligations" as used in one part of a taxing statute could and did have an entirely different meaning when used in a different context in another part of the same statute.

We hold, therefore, that Annie C. B. Parker received by bequest 363 shares of Lehigh Valley Railroad Co. common stock on December 19, 1918, the date of death of her sister Mary, and 1,176 shares of Lehigh Valley Railroad Co. common stock and 400 shares of common stock of the United States Steel Corporation on January 22, 1919, the date of death of her brother Joseph. Since more than five years elapsed between the dates she so received the shares in question and the date of gift, September 23, 1924, it follows that the respondent was correct in disallowing the deduction of $120,535.75 claimed under section 321 (a) (4) of the Revenue Act of 1924.

Reviewed by the Board.

*Decision will be entered for respondent.*