TROVER, to recover the value of two logs of mahogany, tried at the New-Yorlc fittings in June 1802, before Mr. Ju^ice RadclifF.
On a cafe referved, the following fails appeared: That the plaintiff bought of one Bonfall, mate of a veffel, three logs of mahogany, for one hundred dollars—that they v o v » were laying on a wharf, and part of the confederation money P3^’ That Mr. Roget, herein after named, was prefent, and a converfation paffed between him and the mate and the plaintiff; but xvhat it was, was not known, ’ ’
, Charles Smith, on part of the plaintiff, terhned, that he was Pre^ent at th® purchafe. The logs were pointed out, and agreed for in the prefence of the captain of the veffel, and immediately marked by the plaintiff. This was on Satur-" day. On Monday following, Heyl, in the prefence of the captain and of the mate, took poffeifion of the logs, and removed them to a faw-yard, from whence they were taken, and afterwards left by witnefs, for Heyl, at White-Hall. That ^ie caPta™» at ^ie time of their removal, fent a perfon to fee that they were thofe which had been fold, and had the proper marPs. This perfon examined and took the numbers of r r , the logs. Two of the logs being afterwards miffing, the witne^s went in company with Heyl, to the defendant’s yard, where he faw the logs. Heyl claimed them as his, and demanded of the defendant to deliver them to him ; which the defendant refufed. That, during the time the logs were on the wharf, and before their removal, Roget, the perfon, to whom it afterwards appeared in teftimony, the whole cargo of mahogany was configned, gave confent to Heyl to take away the logs, and made no objection to the fale by the mate. The witnefs mentioned, that when he was firft examined, he faid the plaintiff had agreed to buy the logs of mahogany at the rate of one ihilling and fix pence per foot, but that it was after-wards agreed between the plaintiff and mate, that the plaintiff ihould pay the grofs fum of one hundred dollars, and that the fubfequent agreement was in order to get rid of the trouble of having the mahogany meafured ; as the logs were not then meafured.
*15 Smith, after Jeremiah Marihall had given his teftimony, faid, that the logs purchafed by the plaintiff had, at the time' of the purchafe, been meafured; .as he faw the meafurer’s
marks upon them.
Jeremiah Marihall, for the defendant, teftified, that he is
public meafurer of timber : that he was employed by Roget, to meafure a cargo of mahogany configned to the faid Roget, as the witnefs underftood from Roget—the captain and mate of the veffel: That, after the firft day’s work was done, the mate of the veffel pointed out a log of mahogany, which came from, on board the faid veffel, (and which had been meafured, marked and numbered, as No. 21, of the faid cargo,) as being one of three logs, which belonged to him; that the witnels, on the next day, before they began to difcharge any of the mahogany, requefted the mate to mention when they came to the other logs which belonged to him, in order that they might be put into a different bill; upon which the mate laid, that he did not own any three particular logs ; but that he had a right to make choice of three; that the witnefs might meafure the whole together, as he had been direfted, and that he, the mate, would fettle with Roget for the intereft he had therein : in confequence, the account of the meafurement of the whole of the mahogany was kept in one bill, and delivered to Roget, who paid for the meafuring.
Ifaac Roget, the confignee, was then offered as a witnefs : he was objected to by the plaintiff’s counfel, as incompetent; but the judge admitted him, on being releafed by the defendant. The point of his admiffibility was faved by plaintiff.
Roget’s teftimony was, that he never authorized the mate to fell any of the cargo; and that the whole confignment was fold by him to the defendant, before the taking away of the logs : That he never gave any authority to the plaintiff to take away the mahogany : That he never had any knowledge of the claim of the mate to any three particular logs, until after the defendant had purchafed the whole of the reft of the cargo, and until after the plaintiff had taken the three logs from the reft of the cargo, which lay all together on the wharf.
The plaintiff’s counfel offered to prove other declarations and admiflions of the captain, as well before as after the fale of mahogany by the mate to plaintiff, that fuch fale was by
*16 his, the captain’s knowledge and coníént; infilling he flood in the relation of agent for the confignee ;' but the teftimony was rejected. This alfo was faved by the plaintiff’s counfel.
The defendant read a depofition of a clerk in the countinghoufe of Roget, ft'ating, that he was on the Wharf at the foot of Reftor-ftreet, when the plaintiff and feveral other perfons were removing three logs of mahogany, No. 21, 50 and 52, which the witnefs forbade, informing them Roget had fold the logs to the defendant; that, witnefs knew the whole cargo comprifing the three logs above mentioned, were configned to Roget, who has accounted for the fame to the confignor; and that the whole were fold to, and paid for by the defendant „•
The plaintiff then offered to give in evidence a depofition, duly taken, made by the mate, to prove plaintiff’s intereff in the logs, and Roget’s confent to the felling the logs in queltion to the plaintiff and which was infilled upon as proper tef. timony, there being no evidence of the mate having warranted the logs to the plaintiff, as his property: but the Judge was of opinion that fuch teftimony was inadmiflible, unlefs the mate was releafed by plaintiff; which opinion was faved by the plaintiff’s counfel.
The plaintiff then produced a releafe; and- the witnefs to' its execution being called upon to prove it, teftified, that he was prefent at the time the depofition was taken, and on his return to his office, being an attorney, and ailing in behalf of the attorney for the plaintiff, fearful left an objeétion might be taken to the intereft of the witnefs, he drew a releafe, and the fame was executed by the plaintiff, and delivered to the mate in his office, who left it with witnefs, for the purpofe of being ufed on the trial.- That this was done in the courfe of half an hour after the depofition was taken ; and before the plaintiff^ witnefs and mate had feparated, after they had left the place of examination. That the defendant’s attorney crofsexamined the mate, and fuch crofs-examination was in writing, at the end of the mate’s teftimony, as proven on part of the plaintiff; and a confent was fubferibed to fuch examination by defendant’s attorney, as follows :
“ We, the fubferibers, attornies for the plaintiff and defendant refpeitively, do confent, that the above depofition be
*17 read in evidence upon the trial of this caufe ; faving and referving the exceptions to the admiffibility of the teftimony.”
Under thefe circumftances, the counfel for plaintiff moved, that the depofition ought to be read in evidence ; but it was rejected. This point was alfo referved by plaintiff.
The judge charged, that it was abfolutely neceffary* the plaintiff ihould ihew an acquiefcence on the part of Roget, to the fale by the mate ; and that the confent of the captain, or his aiSts, and that of the mate, were not binding without fuch acquiefcence.
The jury found a verdift for defendant.
The plaintiff now moved to fet aiide the verdict for mifdireftion in the judge, both in his charge, and rejection of proper teftimony ; and for a new trial to be granted.
Woods. A releafe to Bonfall, the mate and vender of the plaintiff was totally unnecellary: the court ought not to have alked it, as he was competent, being equally liable, howfoever the caufe was determined: firft, to Roget the coniignee, and alfo to the plaintiff, as purchafer. Peake, Law of Evid. ng.† And peculiarly fo, as Bonfall had fold without any warranty; and therefore, had never afferted any intereft in himfelf.‡ Peake 113. “If a vendor of an eftate covenant for the title, “ or warrant the premifes, he cannot be a witnefs to fupport “ the title of the vendee, in an action againft him .by a third “ perfon for the premifes. 2 Roll. Abr. 685. But a vendor, “ who does not covenant for the title, or enter into any war- “ ranty, is a good witnefs. Busby v. Greenslate, 1 Stra. “445.”§ But if the court ihould be of opinion a releafe was neceffary, fuch a releafe was given and offered. The circumftance of its being after the examination, is immaterial, from the peculiar fails ftated in the cafe. If Roget, the coniignee, was competent, being releafed by the defendant, Bonfall, the vendor, was as much fo, on a releafe from the plaintiff. Befides, the declarations and admifiions of the captain were full evidence for the plaintiff. He was the agent of the coniignee ; and, as in that capacity he confented to the fale to the plaintiff it bound Roget, and confirmed the fale by Bonfall: the
*18 rejecting, therefore, thefe declarations and admiffions, was contrary to law. From the fads it appears, the plaintiff had peaceable poffeffion under a good title ; and at all events, his poffeffion alone was enough to prevent the defendant from taking the logs out of that poffeffion ; for it was as much continued while the logs lay at White-Hall, as if in the plaintiff’s yard; having been left there by him.
Boyd for the defendant. There is not an equal liability in Bonfall. He is not liable to the defendant; for there is no privity between them. The defendant purchafed of Roget, and Roget is liable to him, not the mate ;* for he is liable only to the purchafer, the plaintiff; and therefore liable to only one of the parties in the caufe. Therefore, admitting the principle of equal liability, (which he did) it did not apply; as to the releafe being given after the depoiition offered, the teftimony was properly rejeded. The reafon why a releafe is neceffary, is to do away the effed of the influence of intereft; but if it be given after the teftimony, the intereft has already had its effed. The declarations and admiffions of the captain could not be received; for he is not the agent of the confignee, and his agency terminates on delivery ; which had here taken place, and a fale been made to the defendant. He denied, therefore the poffeffion of the plaintiff; as it had been transferred by the confignee to Burling ; and as to the warranty, in fales of chattels it was not neceffary.
Radcliff J. I underftood the mate’s claim to be founded on his office, as a privilege annexed.
Woods in reply, infilled on his firft poEtions.
Per curiam. The fads of this cafe arife merely from the depoEtions of xvitneffes fubmitted to the court. From thefe it appears, that the plaintiff purchafed of one Bonfall, the mate of a veffel, three logs of mahogany; that at this time, the captain and confignee were prefent, as is ftated by the witneffes of the plaintiff. On the cafe, as prefented to us, there is fome degree of contradidion in the teftimony, which, as it was laid before the jury, they, no doubt, duly eftimated. In this adion, property and poíTeffion muft be ffiewn. The only evidence of this property and poffeffion is from the teftimony of Mackworth and Smith, They líate, that the price contraded for between Bonfall and the plaintiff, was one hundred dollars; and Smith, as a reafon for a grofs fum being *19 •agreed upon, adds, “ that it was to fave the trouble of having the mahogany meafured.” Marihall, the public meafurer, depofes, that he did meafure the whole cargo, and that the mate fold them after they were fo meafured. That, at the mate’s requeft, the charge of meafuring was debited to Roget, the confignee, who paid for it; and that the mate himfelf acknowledged he did not own any three particular logs, but that he had a right to make choice of three, and would fettle for it with Roget. After this teftimony is delivered, Smith recollects that the mahogany had been meafúred, and that he faw the meafurer’s marks on the logs ; though before that, he aiEgns its non-meafnrement as a fpecific reafon for a grofs price of one hundred dollars being agreed as the purchaife money. After this, a releafe being produced from Burling, the defendant, Roget, the confignee, was admitted very properly as a witnefs, and he is followed by his clerk. Under thefe circumftances, it muft be taken for granted, that the jury weighed Smith’s credibility; and if fo, there could be no doubt that there was neither property nor pofteffion in the plaintiff. It is urged as a reafon for a new trial, that the judge’s charge precluded certain teftimony ; or at leaft, prevented the jury from weighing it : for, the judge charged that it was necefiary to ihew an acquiefcence in Roget. But it muft be prefumed to have been underftood by the jury, that Roget’s acquiefcence was necefiary for Heyl to Ihew property in himfelf; and, on this point, we think, that the mate, Bonfall, muft have ihewn property, as the confignment • was to Roget entirely. The teftimony of Smith was very properly difcredited, and the verdicft ought to ftand. The releafe of Bonfall, being after his examination, and when the • intereft he had, muft have had its full influence and operation on his teftimony, came too late, and could not be received.

His Honour’s real charge was, as the reporter is from high authority informed, by no means of the very pofitive kind ftated by the cafe; but qualified with reafonings on the nature of the a ¿lion, the circumftances of the cafe, &c. and after ftating the evidence given, and pointing out to the jury how the law was, according as the teftimony ihould be believed, his Honour left to them to determine on its weight.

 It is fuppofed Evans v. Williams, is the cafe alluded to. 7 D. & E. 481, n. (c.)

 The old cafes make a diftinction between fales of chattels in poftefíion and out of poffvifion. That in the firft inllance, an ex-prefs warranty is not neceffary; in the fecond, it is. Medina v. Stoughton, 1 Salk. 372. But this has been denied to be law. Pasley v. Freeman, 3 D. & E. 57,58. See 1 LexMer. Am. 372.

 The reafon of thefe determinations is, that with refped tp purchafes of lands, the maxim of “ caveat emptor” applies: in thofeoi chattel interefts, it does not. Money had and received, will not lie to recover back the confideration paid for an afíignmentof a mortgage, which turns out to be a forgery, if bona fide transferred, and the aífignor has not covenanted for the goodnefs of the title. Bree v. Hohbech, Doug. 655. *18 But fee 2 Ch. Ca. 19, and Hardinge v. Nelthorpe, Nels. Ch. Rep. 118.

 The principle is, that the liability mufi be immediate, to the parties in the fuit, and not a remote, circuitous liability. Ball v. Bofl> wick, 1 Stra. 5JS-