HARRIET M. MOORES v. JAMES B. MOORES ET AL.

Testator devised as follows: "In the first place, I order and direct all my just debts, &c., to be paid out of my estate, real and personal. *Second.* In order to enable my executrix, hereinafter named, to carry into effect the foregoing direction, I do hereby invest my said executrix with power to sell and convey my real estate, &c. My will and order further is, that all the rest, residue and remainder of my estate, both real and personal, be converted into money, &c., for the use and maintenance of my wife, Margaret, and for the maintenance and bringing up of my children, S. and H. M., &c. My will and order further is, that at the decease of my said wife, all that may remain of my estate be equally divided between my two children, S. and H. M., share and share alike, &c. *Lastly.* I appoint my said wife, Margaret, sole executrix," &c. The will was proved and letters testamentary granted to

the executrix, November 6th, 1834. The estate of testator was settled about the year 1836. The executrix, a few months before her death, by deed of January 29th, 1878, reciting the first clause under the second head of the will, conveyed all the real estate of which the testator died seized, to the plaintiff, who was the child, H. M., named in the will. *Held*—

1. That the executrix took no estate in the land, but only a bare authority to sell in case the personal estate should prove insufficient for the payment of testator's debts; the real estate descending on his death to the heirs at law, subject to be divested by a proper execution of the power of sale.

2. That the fact that the real estate had remained unsold for more than forty years after the settlement of testator's estate, raised a presumption, equivalent to the strongest affirmative proof, that all his debts had been paid out of the personal estate.

3. That the contingency upon which the power of sale was intended to be exercised having never in fact happened, and being no longer liable to happen, the power had ceased to have any legal existence, and the conveyance founded upon it was a mere nullity.

In ejectment.

This was an action of ejectment to recover the possession of a farm in the township of Woodbridge, in the county of Middlesex, in this state. The declaration was in the ordinary form, against the defendants named in the summons. Possession was claimed from April 1st, 1878. Both defendants interposed a plea of not guilty. Cause was tried at Middlesex Circuit, at the December Term, 1878, and, by consent of counsel, before the court without a jury.

Plaintiff offered in evidence certified copy of will of Daniel B. Moores, Exhibit A.

The plaintiff also offered in evidence deed from Margaret Moores, executrix of the last will and testament of Daniel B. Moores, to Harriet M. Moores, the plaintiff, of property in question, dated January 29th, 1878, acknowledged January 29th, 1878, recorded in Book 109 of Deeds for Middlesex county, page 661. The deed contained the following recital:

"Whereas, the said Daniel B. Moores, deceased, in and by his last will and testament, bearing date the eleventh day of October, one thousand eight hundred and thirty-four, did

order and direct as follows : In order to enable my executrix hereinafter named to carry into effect the foregoing direction, I do hereby invest my said executrix with power to sell and convey my real estate, in one or more lots or parcels, and at public or private sale, and to give good and sufficient titles to convey the same. I appoint my said wife, Margaret, the sole executrix of this my last will and testament. Dated this eleventh day of October, eighteen hundred and thirty-four."

Deed contained covenant against grantor. Consideration, $4500.

### EXHIBIT A.

I, Daniel Britain Moores, of Woodbridge, in the county of Middlesex, and State of New Jersey, being of sound mind, do make and publish this my last will and testament in words following :

In the first place, I order and direct all my just debts and funeral expenses to be paid out of my estate, real and personal.

*Second.* In order to enable my executors hereinafter named to carry into effect the foregoing direction, I do hereby invest my said executors with power to sell and convey my real estate, in one or more lots or parcels, and at public or private sale, and to give good and sufficient titles to convey the same.

My will and order further is, that all the rest, residue and remainder of my estate, both real and personal, be converted into money, and the same be put at interest, on good real estate security, and that the interest of the money so vested be for the use and maintenance of my wife, Margaret, and for the maintenance and bringing up of my children, Samuel and Harriet Martin, and this gift to my wife to be in lieu of dower.

In case the money so vested—that is to say, the interest thereon—is not sufficient for the comfortable maintenance of my said wife and children, my will and order is that my said wife may use of the principal from time to time at her discretion.

My will and order further is, that at the decease of my said

wife, all that may remain of my estate be equally divided between my two children, Samuel and Harriet Martin, share and share alike, saving to my son, Samuel, the sum of one hundred dollars, which I received from him out of the estate of my sister, Eliza, which sum is to be put at interest and kept at interest for his use until he arrives at the age of twenty-one years.

*Lastly.* I appoint my said wife, Margaret, sole executor of this my last will and testament.

Dated this eleventh day of October, A. D. eighteen hundred and thirty-four.

Will proved in surrogate's office of Middlesex county, November 6th, 1834, and letters testamentary granted to Margaret Moores, the executrix named in said will.

The estate of Daniel B. Moores was settled about the year 1836.

The Circuit Court held that the plaintiff was entitled to recover possession of the equal undivided half part of the premises in question, as an heir at law of the testator, but could take nothing by virtue of the deed of January 29th, 1878.

A rule to show cause having been allowed, the following reasons were assigned for a new trial:

1. Because, under the will of Daniel B. Moores, the executrix took a power coupled with an interest, and not a mere naked power of sale.

2. Because, having a power coupled with an interest, the executrix was empowered to sell the property at any time for her own benefit.

3. Because the will gave the executrix such a title that the heirs could not convey a valid title without the executrix joining in the deed.

4. Because the evidence shows that the plaintiff obtained a good and perfect title under the deed of the executrix.

5. Because the verdict was in favor of the plaintiff for only an equal undivided one-half part of the property,

whereas it should have been in favor of the plaintiff for the whole property.

Argued at June Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE and WOODHULL.

For the plaintiff, *Vail & Ward.*

For the defendant, *Garret Berry.*

The opinion of the court was delivered by

WOODHULL, J.   The first question presented is whether, on the death of the testator, the real estate of which he died seized descended to his heirs at law, or vested in the executrix by virtue of the will.

The solution of this question depends upon the expressed intention of the testator, to be gathered from all parts of his will.

If he plainly intended that the legal title to his real estate should vest in the executrix, instead of descending to the heirs at law, and has used apt words for that purpose, his intention must of course prevail.   But the provisions of this will, read in the light of well-established rules of law, fail to disclose any such intention.

It is settled beyond controversy, that while a devise of land to executors to sell passes the interest in it, a devise that executors *shall sell,* or *that the lands shall be sold by them,* or *of the land to be sold by the executors,* confers a power merely, and does not give any interest.   4 *Kent's Com.* 420; 1 *Sugden on Powers* 132–134; 1 *Powell on Devises* 233.

In Bergen *v.* Bennett, Kent, J., says: " If a man by his will directs the executors to sell his land, this is but a bare authority without interest, for the land in the meantime descends to the heirs at law, who, until the sale, would at common law be entitled to the profits.  *   *   *  But if a man devises his land to his executors to be sold, then there is a power coupled with an interest ; for the executors in the mean-

time take possession of the land and of the profits." 1 *Cai. Cas.* 16.

"A naked authority," says Mr. Powell, "is where a man devises that his executors shall sell his lands, or orders that his land shall be sold by his executors, or appoints, constitutes and empowers A and B, whom he makes his executors of his last will, to *sell, let,* or *set to sale,* his estate. In all these cases the executors have only a naked authority to sell; and after the death of the testator the freehold descends to the heir, who is entitled to the profits until the sale." 1 *Powell on Devises* 233, and cases.

In Chambers *v.* Tulane, the only power of sale given to the executors was in these words: "It is my will and desire that all and every part and parcel of my real and personal estate hereinbefore not devised or bequeathed after my said son, H., arrives at the age of twenty-one years, in case his mother hath then departed this life, shall be sold at the discretion of my executors," &c. It was held by Chancellor Williamson that this power of sale was nothing more than a naked power. "It is true," he says, "the executors have an interest in the land with other devisees in the will named. But this is not what is meant by a power coupled with an interest. These lands are not devised. The title descended to the heir at law. No interest is devised to the executors, and they have no control over the land as executors until the happening of certain events, and then the only power conferred is to sell." 1 *Stockt.* 146. See also *Jackson* v. *Schauber,* 7 *Cow.* 187; *S. C.,* 4 *Wend.* 16; *Den* v. *Snowhill,* 3 *Zab.* 447; *Herbert* v. *Tuthill, Saxt.* 141; *Gest* v. *Flock,* 1 *Green Ch.* 108; *Fluke* v. *Ex'rs of Fluke,* 1 *C. E. Green* 478; *Romaine* v. *Hendrickson,* 9 *C. E. Green* 232.

Applying to the provisions of the will in question the principles of the foregoing cases and numerous others cited in the books referred to, it is clear that the executrix as such took no estate in the testator's land, but only a bare authority to sell; and that immediately upon the testator's death his real

estate descended to and vested in his heirs at law, subject to be divested by a proper execution of the power of sale.

The next question is, whether the deed of January 29th, 1878, from Margaret Moores, executrix, &c., to the plaintiff, operated to divest the title of the heirs and to vest it in the plaintiff.

This deed recites and was evidently intended to execute the power of sale given under the second head of the testator's will, in which, after directing his debts to be paid out of his estate, real and personal, he goes on to say : " *Second*. In order to enable my executrix hereinafter named to carry into effect the foregoing direction, I do hereby invest my said executrix with power to sell and convey my real estate in one or more lots or parcels, and at public or private sale, and to give good and sufficient titles to convey the same."

The particular purpose intended to be effected by the power given in this part of the will was the payment of the testator's debts. The contingency upon which the power was intended to be exercised was the insufficiency of his personal estate for that purpose. The fact that the real estate remained unsold for more than forty years after the death of the testator, and after the settlement of his estate, raises a presumption equivalent to the strongest affirmative proof, that long before the execution of the deed under which the plaintiff claims, all the testator's debts had been fully paid out of his personal estate. The object of the power having been already accomplished, the contingency upon which alone it was intended to be exercised having never in fact happened, and being in the nature of things no longer liable to happen, the power had ceased to have any legal existence, and the conveyance founded upon it, if not otherwise supported, was a mere nullity. It is insisted, however, on the part of the plaintiff, that the power of the executrix to sell was not limited to a sale for payment of debts; that as the will orders all the property to be turned into money, there is a clearly implied power to sell the real estate even after debts are all paid, and that the recital in the deed, if wrong, is mere surplusage, and

does not weaken the force of the conveyance. The assumption upon which this argument rests, viz., that the second clause under the second head of the will orders all the property to be turned into money, whether necessary or not for the payment of debts, is not, in my judgment, warranted by the language of the testator.

The scheme of the will seems to me to be simply this : The testator intended, in the first place, to make his whole estate, real and personal, liable for the payment of his debts ; but plainly intended also that the personal estate should be first applied and exhausted before resorting to the real estate. In case the personal estate should prove insufficient for the payment of his debts, so that the sale of some part of his real estate would be required to make up the deficiency, then his design was that the whole of it should be sold and the entire property be turned into money.

But if, on the other hand, the personal estate should turn out to be sufficient for the payment of all his debts, so that no part of the real estate need be sold for that purpose, his intention was that his farm should remain intact for the maintenance of his family, and on the death of his wife be equally divided between his two children, Samuel and Harriet Martin, the present plaintiffs.

It follows from this construction that the deed under which the plaintiff claims can find no support in either of the clauses referred to. At the time of its execution it was not only unauthorized by the provisions of the will, but was plainly calculated, if it was not designed, to thwart and defeat the manifest intention of the testator.

The case was rightly decided by the Circuit Court, and the rule to show cause is discharged, with costs.