NELSON Z. GRAVES

*v.*

EDWIN FANCHER et al.

[Submitted April 9th, 1912.   Decided May 23d, 1912.]

On April 2d, 1871, John Rutherford and wife granted and conveyed to the Thomas Iron Company, their heirs, successors and assigns forever "the right and privilege of flowing with water all the lands lying on the southwest side of the road leading from the Wawayanda Furnace to Vernon covered by the waters of the Wawayanda Lake [the land in dispute] at any height of said waters from low to high-water mark, said high-water mark being a straight line cut into the rock near the southern end of the main dam of the Wawayanda Lake, and above said line is cut the letters H. W., and also the right and privilege of flowing with water from low-water to high-water mark the lands lying on the northeasterly side of the road leading to Vernon as aforesaid, said lands being part of the farm known as the Banta farm with the appurtenances and all the estate, title and interest of the said parties of the first part therein." Then follows a covenant that the grantors at the time of the delivery of the deed were "the lawful owners of the premises above granted and seized thereof in fee-simple absolute." There was also a covenant that the grantors would warrant and defend "the above-granted premises" in the quiet and peaceful possession of the grantees and their successors. The instrument contained no *habendum* clause nor any covenants except those above mentioned, and the controversy between the parties is over the question whether the deed conveyed a fee-simple title or merely a right of flowage. There was no evidence in the case to show when the lands embraced in the deed in question were flowed with water, or whether the lake was a natural lake or an artificial one caused by the building and subsequent raising of a dam.—*Held*, that the deed instead of conveying a mere right of flowage, conveyed at the date of its execution and delivery a fee-simple estate in the lands described therein.

———

On final hearing on bill, answer, replication and proofs.

*Mr. Alfred F. Skinner* and *Mr. Addison H. Hazeltine,* for the complainant.

*Mr. Henry Huston,* for the defendant.

HOWELL, V. C.

The bill in this case is filed to quiet title to lands covered by a small portion of the waters of Wawayanda lake and lying within the boundaries of a farm known as the Banta farm, which is now owned by the defendants. The land in dispute lies at the north end of the lake and at the south end of the Banta farm and embraces about seven or seven and a half acres of land; it is wholly covered by the waters of the lake and is divided by a highway into two portions, the larger one lying to the south of the highway.

On April 2d, 1871, John Rutherford and his wife, in consideration of "one dollar and exchange of lands * * * bargained and sold * * * and did grant and convey" to the Thomas Iron Company, their heirs, successors and assigns forever

"the right and privilege of flowing with water all the lands lying on the southwest side of the road leading from the Wawayanda Furnace to Vernon covered by the waters of the Wawayanda Lake [the land in dispute] at any height of said waters from low to high-water mark, said high-water mark being a straight line cut into the rock near the southern end of the main dam of the Wawayanda Lake, and above said line is cut the letters H. W., and also the right and privilege of flowing with water from low-water to high-water mark the lands lying on the northeasterly side of the road leading to Vernon as aforesaid, said lands being part of the farm known as the Banta farm with the appurtenances and all the estate, title and interest of the said parties of the first part therein."

Then follows a covenant that the grantors at the time of the delivery of the deed were "the lawful owners of the premises above granted and seized thereof in fee-simple absolute."

There was also a covenant that the grantors would warrant and defend "the above-granted premises" in the quiet and peaceful possession of the grantees and their successors. The instrument contained no *habendum* clause nor any covenants except those above mentioned.

The bill alleges that the complainant is in the peaceful possession of the lands and premises described in the above-mentioned deed, claiming to own the same in fee-simple; that the complainant's title is denied and disputed by the defendants who claim to own the same or some interest therein, and that no suit

or action of any kind whatever was then pending to enforce or test the validity of such title or claim, and it prays for a determination and quieting of the title in the usual form, and complies fully with the statutory requirements.

The answer does not deny the allegations of the bill touching the question of complainant's possession or any of the statutory requirements alleged, but is confined to an exposition of the title deeds subsequent to the Rutherford conveyance under which both complainants and defendants claim, and denies the complainant's title. It admits, however, that the complainant has a right of flowage over the lands in question, and that defendant's title is subject to such right.

It may be said at this point that the validity of a deed must be determined by facts which exist at the time of its execution and delivery. It was so held by Vice-Chancellor Van Fleet in *Ogden* v. *Thornton, 30 N. J. Eq. (3 Stew.) 569.* If a deed is valid when delivered it must always remain so, and nothing can affect the title created by such a valid instrument except another instrument equally valid. We, therefore, must come to a consideration of this conveyance as of its date and the date of its delivery. Subsequent deeds may affect the title but cannot affect the deed in question. In the same manner and for the same reason the deed must receive its construction as of its date and the date of its delivery. Events occurring subsequently can have no bearing upon the meaning of the deed.

The controversy between the parties is over the question whether the deed conveyed a fee-simple title or whether it conveyed merely a right of flowage. There is no evidence in the case to show when the lands embraced in the deed in question were flowed with water, or whether the lake was a natural lake or an artificial one caused by the building and subsequent raising of a dam. Evidence on this point might have contributed toward the clearing up of the dispute, but without it I am inclined to assume that the waters of the lake at the time the deed was made flowed over the land in question just as they do to-day, and the deed will be construed with reference to that assumption.

A deed similarly worded was construed by this court in the case of *New Jersey Zinc Co.* v. *New Jersey Franklinite Co.,*

*13 N. J. Eq. (2 Beas.) 322.* The deed then in dispute was made in 1852 by the Sussex Company to the New Jersey Zinc Company. It contained a conveyance to the grantee of "all the zinc and other ores except franklinite and iron ores" found or to be found in or upon the premises therein described; after which description the deed contains this clause,

"together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, &c., and also all the estate, right, interest, property, claim and demand whatsoever as well at law as in equity of the said parties of the first part in and to the above described premises, and. every part and parcel thereof with the appurtenances."

It was argued that this language included all the estate and interest of the grantors in the premises described and operated to pass to the grantees, not only all the franklinite and iron ores, but to pass the absolute fee in the land itself. Chancellor Green declined to adopt this construction, and held that the words in question, including the word "premises," should be limited to the ores which were the things granted.

On appeal (*15 N. J. Eq. (2 McCart.) 418*) this ruling was reversed by a nearly equally divided court, and in the opinion of Mr. Justice Vredenburgh, who wrote for the majority, it was held that the words "above described premises" referred to the lands described by metes and bounds as the lands in which the zinc and other ores were to be found, and were not confined to a mere reference to the ores. He says: "The language used here has precisely the same legal effect as if the description had read 'all the zinc and other ores found in, also all the estate of the parties of the first part of, in and to the following. described premises, that is to say,'" &c., and then describing it by metes and bounds. The deed upon the face. of it was evidently intended to convey not only the zinc ores, but also the estate the grantors had in the premises described, clearly as much so as if the deed had omitted the words "zinc ores" and had merely said "we convey all our right and title to the premises abutted and bounded as follows." The court of errors and appeals, in 1893, in the case of *Lehigh Zinc and Iron Co.* v. *New Jersey Zinc and Iron Co., 55 N. J. Law (26 Vr.) 350,* followed that construction of the same deed.

A similar construction was given to similar words in the case of *Golden* v. *Coonan, 107 Iowa 209.*

In view of these authorities, it is my judgment that the deed instead of conveying a mere right of flowage, conveyed at the date of its execution and delivery a fee-simple estate in the lands described in it.

I do not find in the subsequent events any conveyance which can change the result. The lands in dispute belonged at one time to a larger tract known as the Banta farm, containing about one hundred and sixty-six acres of land. The tract in question contains about seven and a half acres. In 1880 Charlotte L. Rutherford, as executrix of the will of John Rutherford, conveyed the Banta farm to Andrew Layton by a deed describing it particularly, which contained this provision:

"It being mutually agreed that this conveyance is made subject to all the conditions and provisions of a certain deed to the Thomas Iron Company dated April 22d, 1871, from John Rutherford and wife."

It will be observed that this exception amounts to a reservation from the conveyance of the tract of land previously conveyed to the Thomas Iron Company; and Layton must be charged with knowledge of the fact that the land had been conveyed to the Thomas Iron Company seventeen years before the date of his deed. This took the land in question out of all the conveyances of the Banta farm which followed. In 1891 the Thomas Iron Company conveyed its Wawayanda tract to Victor A. Wilder, but there is excepted from the conveyance the Banta farm which had been previously conveyed to Layton. It will be remembered that the tract in question was originally part of the Banta farm, and that farm, including the tract in question, is excepted from the conveyance to Wilder. The effect of that deed is therefore to reserve the lands in question from the conveyance and leave the title in the Thomas Iron Company. Wilder conveyed the tract to Searles in 1892 with the same exception and reservation. In 1902 Searles and Wilder reconveyed to the Thomas Iron Company without making mention of the conveyance to the company of any rights acquired by it under the original Rutherford deed. This would seem to have left the title to the land in question in

the Thomas Iron Company, so that when the Thomas Iron Company conveyed to the complainant in 1905 it could and did include in the conveyance all the rights acquired by the Thomas Iron Company under the Rutherford deed in 1871. This seems clear, and, in my judgment, places the paper title to the lands in question in the complainant.

I will therefore advise the usual decree confirming the title of the complainant.