EDITH R. HOPPING et al.

*v.*

GEORGE R. GRAY et al.

[Submitted November 10th, 1913.   Decided November 22d, 1913.]

1. Testator gave the income of one-third of his estate to his daughter L. for life, the income of another third to his son F. for life, and the remaining third he devised absolutely to his daughter E. on her attaining the age of twenty-four; the executors, also named as trustees, being directed to lease or sell the property in the meantime as might be necessary and pay the income to the beneficiaries quarterly.—*Held*, that, testator not having devised the remainder of the estate devised to F. for life, the legal title to such third did not pass to the executors or trustees, but instead descended to testator's heirs-at-law, subject to be divested by the exercise of the power by the trustees.

2. Where, under testator's will, his son took the right to receive the income of one-third of the estate during his life, also immediate legal title to an undivided one-ninth of the estate because of testator's failure to dispose of the remainder after his life estate in an undivided third, the son's equitable life estate to the extent of one-third thereof merged in the remainder to the extent of one-ninth thereof immediately on testator's death, and hence such ninth was subject to execution by the son's creditors.

3. A trustee may not assert a legal title by adverse possession against the *cestui que trust*, the trustee's title being that of the *cestui que trust*.

4. Where devisees held property as tenants in common, one of them could not claim adversely against one who claimed an interest in the share of one of such cotenants purchased at an execution sale, under the rule that one cotenant, in the absence of ouster, cannot assert title by adverse possession against another.

On exceptions to master's report.

*Mr. Charles D. Thompson* and *Mr. Edward Q. Keasbey,* for the exceptants.

*Mr. Cecil H. MacMahon, contra.*

HOWELL, V. C.

This suit is brought for the partition of lands of which George D. Randall died seized. The master to whom the cause was referred was directed to report upon the right, title and interest of Frederick L. Randall, a son of the testator, and of William McMurtry and George M. Keasbey, who claim to have succeeded to the interest of the said Frederick, in the real estate sought to be partitioned. The question involves a construction of the will of George D. Randall, and an ascertainment therefrom of the rights of the litigants. Mr. Randall died in 1889, leaving three children, Lillie E., Frederick L. and Edith. By the third paragraph of his will he gave the income of one-third of his estate to his daughter Lillie E. during her life, and the income of another third thereof to his son, Frederick L., during his life; such income to be paid to them quarterly. · The remaining third he devised absolutely to his daughter Edith on her arriving at the age of twenty-four years; but his executors were directed to pay her the income thereof quarterly until she arrived at that age.

McMurtry recovered a judgment against Frederick L., and levied upon his interest in the estate of his father under the will, sold the same at sheriff's sale and took a deed therefor, over twenty years ago. He transferred an undivided quarter of the interest which he got under that deed to Keasbey; but neither he nor Keasbey was ever in possession. In the present partition suit the controversy is between McMurtry's interest and the Randall children over what passed to McMurtry by virtue of the sheriff's deed. It is conceded on all hands that Frederick took a life estate in one-third of the income of the residuary fund, and that there is no testamentary disposition of the remainder of this one-third of the residue. Therefore, as to the one-third, the income of which is devised to Frederick during his life, the testator died intestate.

Upon Mr. Randall's death the legal title to this one-third could not be held in abeyance; it either descended to his heirs-at-law by force of the statute of descents, or it went, as is claimed by the Randall heirs, to the "trustees" named in the will, or their successor in the trust. By the eighth paragraph of the will the testator appointed Gray and Duryea "executors

and trustees" of his will, and authorized them to sell any or all of his real estate, or rent the same whenever in their judgment it would seem to them most advantageous to his estate to do so, and to invest the proceeds thereof, and from the income of said investment to pay the several legacies provided for in his will. If the title went to the "trustees," the judgment and execution of McMurtry never became a lien on the disputed share, or any part of it, and he acquired nothing by virtue of the sheriff's deed. If, on the other hand, it descended to the heirs-at-law, then the interest of Frederick in the real estate in question was a life estate in one-third and a fee-simple in an undivided one-ninth, and it was subject to the levy.

It must be conceded that there was no express devise of the legal title of the land to the so-called "trustees;" neither do I think that there was any transfer thereof to them by implication. What the trustees got was a mere power to sell and to lease, to which the estate was subservient so long as it was necessary that it should be so in order to effectuate the purposes of the will. I must, therefore, reject the insistment of the Randall heirs that the title went, by virtue of the devise, to Gray and Duryea, as trustees. It is well settled that in such cases (where there is intestacy) the real estate of which the testator died seized descends to the heirs-at-law, subject, however, to be divested or otherwise varied by a proper execution of the power. *Moores* v. *Moores,* 41 N. J. Law (12 Vr.) 440; *Fluke* v. *Fluke,* 16 N. J. Eq. (1 C. E. Gr.) 478; *Romaine* v. *Hendrickson,* 24 N. J. Eq. (9 C. E. Gr.) 231; *Todd* v. *Wortman,* 45 N. J. Eq. (18 Stew.) 723; *Bonnell* v. *Bonnell,* 47 N. J. Eq. (2 Dick.) 540. There is an earlier opinion on the same point by Chancellor Williamson in *Brearley* v. *Brearley,* 9 N. J. Eq. (1 Stock.) 21, in which the facts were quite similar to those now under consideration. There the testator made provision for his wife in real and personal estate, and then empowered the executors to sell the residue thereof and to rent it until sold, and gave them directions about the investment of the money, but did not devise the remainder in the lands. The clause of the will which made this provision is as follows:

"It is my will and I do hereby for that purpose authorize and empower my executors hereinafter mentioned to sell all my estate, both real and personal, excepting such parts thereof as are disposed of either at public or private sale, as they may deem advisable, the said real estate to be rented at their discretion until such time as a fair price can be obtained for the same or any part thereof * * * And I do further devise and request my said executors that all the moneys arising from the sales of my real and personal estate, or which shall come to their hands from any other source or sources whatsoever, shall be placed at interest on good freehold security at the discretion of my executors until such time as the same or any part thereof shall be needed for the purpose of carrying into effect the provisions of this my last will and testament."

It was held under this clause that the powers of sale and of lease were mere naked powers, and that the title to the land of which the testator died seized devolved by operation of law upon the heirs-at-law, but subject to the powers, and that the power given to them as to rents and profits carried no interest in the land.. The chancellor says: "But here is no devise of occupation or of the rents and profits; the power of the executors to take the rents is only by implication, * * * as the power to rent implies the power to collect the rents, the executors possess the power of collecting; but it will be seen the interest given them in those rents and profits is very far from conferring upon them any title to the land."

In my opinion, it is very clear that a naked power was conferred by the will upon the so-called "trustees;" it may be that that power may require that the trustees should have the management of the estate during the terms of the life tenants, in order that the provisions of the will relating to the income may be observed. Or, perhaps, we might go further, and say that the so-called trustees are entitled to the actual possession of the estate for the purposes of the will. But such power of management, of leasing and of taking possession, if the argument may go so far, does not carry the legal title, and I am therefore constrained to hold that an undivided one-ninth in the real estate in question descended to Frederick immediately upon the death of his father, and became amenable to the judgment and execution of McMurtry.

It is next urged that the judgment and execution of McMurtry could not be a lien upon the right of Frederick to receive the

income of one-third of the estate during his life, because that was an equitable interest to which a levy could not attach. This argument is met by the exceptants by urging that upon the death of the testator there was a merger of this equitable estate into the larger legal estate which had devolved upon him by reason of the intestacy above mentioned. That such a merger may take place appears from the authorities cited on the brief of the exceptants. *Wills* v. *Cooper, 25 N. J. Law (1 Dutch.); 137; Bolles* v. *State Trust Co., 27 N. J. Eq. (12 C. E. Gr.) 308; Harrison* v. *Moore, 64 Conn. 344.* Chancellor Kent evidently considered that estates of different quantities might merge *pro tanto (4 Kent Com. 99)* ; that is to say, the equitable life estate of Frederick, to the extent of one-third thereof, will merge in the remainder to the extent of one-ninth thereof. This view operates to give to Frederick seizin of a fee-simple title in one-ninth of the lands in question on which the judgment and execution of McMurtry were a lien, and by the sheriff's sale and the sheriff's deed such title and interest were transferred to the judgment creditor.

The Randall devisees claim that inasmuch as McMurtry has made no attempt to take possession under his sheriff's deed for a period of over twenty years, the McMurtry interest has lost the right of entry, and that the statute of limitations has run against him and his assigns. It is not competent for a trustee to assert a legal title by adverse possession against the *cestui que trust;* his title is that of the *cestui que trust,* and there are none of the elements of adverse possession in the relation between them; neither can the Randall devisees claim adversely to McMurtry and his assigns. One tenant in common holds possession for all tenants in common, and except under very peculiar circumstances one cannot assert title by adverse possession against another. *Foulke* v. *Bond, 41 N. J. Law (12 Vr.) 527.* I, therefore, conclude that McMurtry and his assigns are seized in fee-simple of an undivided one-ninth in the lands in question, and that there remains to Frederick L. the equitable right to receive two-ninths of the net income from the lands in suit. I will advise a decree in accordance with these views.