JOHN H. GOLDEN v. M. F. COONAN AND BRIDGET GARRY PENDERGAST, Appellants.

**Deeds.** A deed reciting that the grantee conveyed "a piece of timber on" a certain described lot containing five acres, then giving the metes and bounds, and concluding with a covenant to warrant "said premises" conveys a fee to the five acres, and does not merely transfer the timber.

**Right of Way:** INJURY TO CATTLE. A grantor of land surrounded by other land of the grantor, over which a right of way is also conveyed, cannot complain of the grantee's use of such right of way on the ground that he must also pass over the land of a third person to reach his land, and that he has obtained no right of way from such person.

**Fences.** Proof that plaintiff's horses were injured by a barbed wire fence while they were in a pasture, and that an adjoining owner put up a part only of the barbed wire inclosing the pasture, is insufficient to sustain a recovery against such owner.

**SAME.** One fencing his land with barbed wire is not liable for horses of adjoining owner injured thereby.

**ESTOPPEL.** One whose lands surrounded the lands of another cannot complain that the barbed wire fences of such other were unlawful because incomplete, and that his horses were injured thereby, where he refused to allow him to go to his land and complete the fence.

*Appeal from Palo Alto District Court.*—HON. LOT THOMAS, *Judge.*

FRIDAY, JANUARY 20, 1899.

ACTION for decree adjudging the plaintiff a right of way over certain lands. A hearing was had upon the issues, and decree rendered in favor of the plaintiff substantially as prayed. Defendants appeal.—*Affirmed.*

*B. E. Kelly* for appellants.

*Soper, Allen & Morling* for appellee.

GIVEN, J.—I. The claims of the parties will appear from the following statement of facts: On and prior to November 26, 1868, John Pendergast was the owner of a certain tract of land in Palo Alto county. On that day he sold and conveyed by warranty deed, his wife, the defendant Bridget Garry Pendergast, joining therein, to John Walsh, Sr., a certain five acres of said land. On the thirtieth day of October, 1869, he sold and conveyed by a like deed, his wife joining therein, a certain two and two-fifths acres of said land adjoining the first lot, to Lucy B. Gould. October 22, 1892, Walsh conveyed his said lot to the plaintiff, Mrs. Gould conveyed her lot to the firm of Godden & Ballard, of which firm plaintiff was a member, and on September 25, 1894, Ballard conveyed his interest to the plaintiff. October 30, 1890,

John Pendergast died, testate, seized of all of said land except said two lots, and by his will devised all his real estate to his widow, Bridget Garry Pendergast. Said two lots were covered with timber at the time of the conveyance to Walsh and to Gould, and so situated as to be surrounded on all sides by said other lands of John Pendergast. Mr. Walsh and Mrs. Gould and their grantees were permitted to go to and from said lots over said other lands up to the summer of 1894, when the defendants refused the plaintiff the right to further do so, the defendant Coonan being then lessee of said other lands from Mrs. Pendergast.

II.    Appellants insist that a way of necessity did not exist in the fall of 1892, when the plaintiff became the owner of said lots. They contend that the conveyances to Walsh and Gould were for the purpose of conveying the timber only, and not the land, and that, as all the timber had been taken from the land long prior to the time that plaintiff acquired his title, the necessity for a way to and from said lots had ceased. That these lots were purchased from Pendergast because of the timber thereon we have no doubt, but that only the timber was intended to be conveyed is not sustained by the language of the deeds. · The deed to Walsh recites that the grantees sold and conveyed the following described premises, to-wit, "A piece of timber on lot 5, section 2, township 95, range 33, containing five acres, more or less, according to the survey made by R. A. Smith." Then follow the metes and bounds, and it concludes with the usual covenants as to title to "said premises," and "to warrant and defend the said premises." Were it not for the words "a piece of timber" there would be nothing in this deed to sustain appellants' contention, but those words, we think, are simply descriptive, not of the thing sold, but of the land sold and conveyed. The deed shows that it was premises, not timber, that were sold, and that it was the "premises," not timber, the title to which was warranted. The deed to Mrs. Gould is of "premises" described by metes and bounds, with covenants as to title and warranty of "said premises." Neither these deeds nor the

circumstances under which they were executed warrant the conclusion that they were intended to convey the timber only. This being true, the necessity that gave to Mr. Walsh and to Mrs. Gould and to their grantees a right to go to and from said lots over the other lands of John Pedergast has not ceased. It is insisted that, as the timber had been entirely taken from said lots, the necessity had ceased; but not so, as it was not the timber alone that was conveyed, but the land also. The same necessity existed for a right of way to and from said lots in 1894 as had previously existed, though the necessity of using it may not have been so great. It appears that in reaching his lots from the highway plaintiff had to cross the lands of other owners, but this affords no reason for the defendants denying him the right to pass over the Pendergast land. In the deed to Walsh, following the metes and bounds, it reads as follows: "And it is hereby agreed that the party of the first part and the party of the second part shall give the right of way, one unto the other, to and from said timber." Clearly here is an express agreement to give to Walsh and his assigns the right of way to and from said timber, and why Pendergast should desire such a right of way is explained by the fact that his lands surrounded the lot.

III. Plaintiff in his petition claimed damages for the destruction of a wire fence partially built around his said lots, but his claim was disallowed, and, as he has not appealed, is not now insisted upon. Mrs. Pendergast claims forty dollars damages for timber taken by the plaintiff beyond the line of his lots. This claim was properly disallowed, as there is uncertainty as to just where the boundaries of the lots are, and it is not made to appear with sufficient clearness that the plaintiff did take timber beyond the line of his lots. Defendant Coonan, as lessee of the Pendergast land, was occupying enclosed parts of it as a pasture for his horses and cattle in the summer of 1894. Plaintiff, by his employes, had strung one barb wire entirely around his lots, a second wire partially around, and intended to complete

the fence by putting on other wires.  On returning to do so, they found the gate, through which the road to the lots passed, locked, and the defendant Coonan refused to allow them to go across the Pendergast land to the lots. Two mares belonging to defendant, and kept in said pasture, were found injured by contact with barb wire; and Mr. Coonan, insisting that the injury was caused by contact with the barb wire placed by plaintiff's employes around his lot, asks to recover damages therefor. This claim was also disallowed, and correctly so, we think, as it is uncertain whether the contact was with the wires placed by plaintiff or by contact with the other wire fence inclosing the pasture. Concede, however, that it was by contact with plaintiff's wire; yet he had a right to inclose his land with that kind of fence, and is not responsible for the accident. It is insisted that his fence was not a lawful one, and therefore that he is liable. That it was not a lawful fence is accounted for by the fact that Coonan refused to allow the employes to go upon the lots to complete the fence. Defendant Coonan also claims that plaintiff and his employes left the gate leading to his pasture open at different times, by reason of which his stock strayed and committed damages upon the lands of others, for which he was held liable, and that by reason of leaving said gate open he was otherwise damaged. This claim was properly disallowed, as there is no evidence to show that the gate was left open by the plaintiff or any of his employes.

IV.   Defendant Pendergast, in division 4 of her answer, alleged in substance that one Harrison owned the lands north of her land and that of Coonan, which had been fenced for a number of years prior to plaintiff's purchase of said lots; that plaintiff could not get to defendants' land except through Harrison's and other land; that he had no right of way over Harrison's land; that he bought said lots knowing said facts, and is estopped from now claiming any right of way over defendants' lands. This division of the answer was stricken, on plaintiff's motion, as being immaterial and redundant, and not constituting any defense.

There was no error in this ruling. Our conclusion, after a careful reading of the record, is that the decree of the district court is correct. It is therefore AFFIRMED.