E. W. THOMPSON, *Appellant,* v. THEODORE RUFF, *Appellee.*

Opinion filed March 28, 1918.

1. When the language of a deed of conveyance is certain in meaning and the grantor's intention clearly indicated thereby there is no room for the construction of the language nor interpretation of the words used.

2. A clause, immediately following a description of lands granted in a deed of conveyance, which was as follows: "And the parties of the first part do hereby transfer, bargain, sell, alien, release and convey all the timber situate and being on the following described lands" * * * "And the party of the second part shall have fifteen years from the date hereof in which to remove said timber from said lands last described," held to convey to the grantee only the timber upon such lands and not the land itself.

Appeal from Circuit Court for Lake County, W. S. Bullock, Judge.

Order affirmed.

*Hocker & Martin,* for Appellant;

*Landis, Fish & Hull,* for Appellee.

ELLIS, J.—This is an appeal from an order sustaining a demurrer to a bill of complaint in which the complainant sought to remove as a cloud upon the title to certain lands a claim to ownership thereof asserted by the defendant or that a certain deed of conveyance executed by the defendant to certain persons in 1904 be declared to be a contract for the conveyance of the lands described in the bill and be specifically enforced.

The bill alleges that the defendant Theodore Ruff in 1904 was the owner of certain lands in Lake county, Florida; that the lands were in sections twenty-six and twenty-seven, in township twenty-one south, range twenty-four east. That Ruff and his wife in November of that year conveyed the lands to Hodges and O'Hara, a copartnership composed of H. A. Hodges and F. J. O'Hara. The deed was duly recorded in the public records of Lake county and certified copy thereof was attached to the bill as exhibit "A" and made a part of the bill. That the complainant acquired the lands from Hodges and O'Hara and is now the owner of the same. That the lands are wild, unoccupied and not in the actual possession of any one, except a small portion held for turpentine purposes, but the possession is not adverse to complainant. That the defendant Ruff is asserting title to the lands notwithstanding his deed of conveyance to Hodges and O'Hara, and such claim hinders the complainant in disposing of the lands which he had bought for speculation; that the defendant's claim amounts to a cloud upon complainant's title.

It is also alleged that the defendant Ruff covenanted and agreed with Hodges and O'Hara to execute any other or further quit-claim deed that might be necessary to convey any lands owned by Ruff in Lake county, Florida. Complainant contends that this alleged covenant binds Ruff to execute such deeds as may be necessary to vest in the complainant as the successor in interest of Hodges and O'Hara all of Ruff's title to the lands described in the bill even if those lands were not conveyed to Hodges and O'Hara by the deed from Ruff to them.

The defendant demurred to the bill of complaint upon several grounds, some of which are: that there is no equity in the bill; that the deed from Ruff to Hodges and

O'Hara is neither a conveyance of the lands described nor a contract to convey them; that the deed shows upon its face that the grantor intended to convey only the timber upon the lands described in the bill; that the deed shows defendant did not covenant to convey any or all lands owned by him in Lake County, but only such as were *omitted* from the conveyance by mistake.

An examination of the deed a copy of the record of which is attached to the bill as an exhibit shows that the grantor owned and was interested in a large quantity of land in Lake County. Some of these lands were described in a granting clause of the deed which contained the usual words of conveyance. Other lands were described in a granting clause which contained the usual words of conveyance and the word "quit-claimed" and "quit-claim." Following the first description of lands is a full warranty of title. Following the second description there is no covenant of warranty, but preceding the habendum clause is the following paragraph which immediately succeeds the description of lands, *viz*:

"TOGETHER with all and singular the said lands and all other lands owned by the parties of the first part in Lake County, Florida; excepting 40 acres at or near Mascotte, Florida; And excepting the store building used by the party of the first part; and the parties of the first part covenant and agree with the parties of the second part to execute any other or further quit-claim deed that may be necessary to convey any lands owned by the parties of the first part in LAKE county, Florida, which may have been by mistake omitted from this deed."

The lands described in the bill of complaint are not embraced in either description above referred to. Immediately following the first description of lands in Lake

county is a description of a small acreage located in Orange county, then follows this clause: "And the parties of the first part do hereby transfer, bargain, sell, alien, remise, release and convey all of the timber situate and being on the following described lands, situate in the county of Lake, State of Florida, to-wit:" then follows a description of the lands described in the bill, then continuing: "And the party of the second part shall have fifteen years from the date hereof in which to remove said timber from said lands last described." Following the above clause is a paragraph which reads as follows:

"It is understood and agreed between the parties hereto that some of the lands contained in the foregoing warranty deed in Lake County, Florida, are leased lands; and the party of the first part has only timber privileges to such leased lands which rights and privileges are specified in recorded contracts for sales of timber to the party of the first part, which are of record in Lake Co. Fla. and as such leased lands the parties of the first part only warrant as to the timber privileges for the terms of time specified in such contracts."

The bill does not allege that the lands described from which the alleged cloud is sought to be removed were by mistake omitted from the deed. It is perfectly clear that as to such lands the grantor intended to convey only the timber thereon. If it had been his purpose to convey the lands it would have only been necessary to include them either in the first or second granting clauses. It is evident that the grantor did not intend to convey the land because he expressly conveyed the timber only, a wholly unnecessary thing to do if he had intended to convey the land, because by a conveyance of the land the timber upon it would have passed to the

grantee. The very fact that those lands were described in the conveyance and only the timber thereon conveyed, shows that they were not "by mistake omitted from the deed" as a conveyance.

Solicitors for appellant contend that the clause in the deed conveying the timber should be construed as a conveyance of the lands because of the paragraph immediately following that in which the timber is conveyed and which is quoted above. It being contended that the quoted paragraph was intended "To protect the grantor from his warranty so far as the same might relate to leased lands. If the grantor had only intended to convey the *timber* on the lands such an exception to the warranty clause would have been useless, because the exception by its terms does not release him from liability on his warranty as to the timber."

Placing that construction upon the quoted paragraph solicitors for appellant say that the covenant of warranty embraced the lands described in the bill and as by that warranty the title to those lands was warranted to the grantee the purpose to convey the lands is thus apparent, and that purpose is made more certain by the blanket clause herein quoted whereby the grantor covenanted to "execute any other or further quit-claim deed that may be necessary to convey any lands owned by the parties of the first part in Lake county, Florida, which may have been by mistake omitted from the deed."

The principles controlling in the construction of deeds, that where a deed permits of more than one interpretation the one most favorable to the grantee should be adopted and that the intention of the grantor must be gathered from the whole instrument, are invoked in aid of the relief sought.

It is apparent that the ingenious argument of solici-

tors for appellant depends upon the assumption that the reference to "leased lands" in the quoted paragraph related only to lands that were embraced in the description of lands in the granting clause of the deed and that the covenant of warranty embraced the lands described in the bill.

This assumption is not well founded, because the reference to leased lands was to such lands as the grantor held under "timber privileges" and as nothing to the contrary appears nor is alleged, the lands described in the bill may have been of that class. Besides the warranty is limited to those "premises" which were by the instrument under consideration "granted and released."

In the case of Godden v. Coonan, 107 Iowa 209, 77 N. W. Rep. 852, cited by appellant the deed conveyed "A piece of timber on lot 5, section 2, township 95 range 33 containing five acres, more or less, according to the survey made by R. A. Smith." This description was followed by metes and bounds and concluded with the usual covenants as to title to "said premises" and "to warrant and defend the said premises." The court held that the deed showed that it was the "premises" not timber that were sold, and that it was the "premises," not timber, the title to which was warranted. Saying that "were it not for the words 'a piece of timber' there would be nothing in the deed to sustain appellants contention" which was that the timber only was conveyed. Even if we agreed with the reasoning by which the Iowa court arrived at the intention of the grantor in the deed which was under consideration, the case affords little support to the contention of appellant, because in the deed from Ruff to Hodges and O'Hara there is much outside the description of the lands which indicates the grantors intention to convey only the timber. In the first place

31—Vol. 75

as to the lands which were conveyed the granter granted, sold and conveyed "all the following *tracts* and *parcels* of *lands*" etc., but as to the lands described in the bill he transferred, bargained, sold and conveyed "all of the *timber* situate and being *on*" such lands. In the second place in a separate paragraph by apropriate words he expressly limited the time in which the grantees should remove the *timber from* such lands to the definite period of fifteen years from the date of the deed.

To hold that the grantor intended by that conveyance to convey the lands and not merely the timber thereon would be to pervert the language used in the conveyance and sacrifice the plainly expressed intention of the grantor to a conclusion supported by a specious argument based upon premises not clearly applicable to the subject and unsupported by any words in the deed, or allegations in the bill.

As to the point contended for that the blanket clause operated to convey the lands, we think that the purpose of the words "All other lands owned by the parties of the first part in Lake County, Florida," etc., referred to lands held by the grantor by a title of similar character to that by which he held the lands described in the second division of the deed. Reference has already been made to the apparent classification in the deed of the lands by title. As to one class the grantor gave a warranty of title, but as to the other he gave no warranty. It is very clear that the lands were classified by him according to title and that as to the lands embraced in the second division he apparently thought that he was executing only a quit-claim. It is to lands of that character that the words "all other lands" etc. refer and as to which he agreed to "execute any other or further quit-claim and that may be necessary to convey any

lands owned" by him, "which may have been by mistake omitted from the deed."

Without deciding the question of the validity of "blanket clauses" in deeds of conveyance, we hold that the purpose of the entire paragraph, which has been quoted herein, was to obligate the grantor to convey by quit-claim deed: First, all lands which had been by mistake omitted from the deed, and, second, which were owned by the grantor in Lake county and of the same character as those described in the second division of the deed both as to value and title. Another point worthy of consideration in this connection is the fact that the blanket clause referred to is embraced in a special paragraph immediately following and apparently intended to attach to and form a part of a paragraph in which was described certain lands as waste lands "referred to in the adjustment of a purchase price" and said to aggregate about one thousand acres.

We are of the opinion therefore that the order of the Chancellor sustaining the demurrer to the bill was correct, and the same is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.